**WEAVER et al. v. BISHOP et al.**

No. 24233. Nov. 5, 1935.

H. O. Bland and G. E. Conway, for plaintiffs in error.

Horace H. Hagan and T. Austin Gavin, for defendants in error.

PER CURIAM. The plaintiffs, as the owners of three of the corners at the intersection of Twenty-First street and Louis avenue in the city of Tulsa, filed this suit on March 10, 1932, praying a decree against the defendants constructing and operating a service and filling station on the northeast corner of the said intersection. The grounds alleged as a basis of the injunctive relief prayed are, in substance, that the residences of four of the plaintiffs are located on or in the vicinity of the northwest and southeast corners of the said intersection, and that the remaining plaintiffs operate a school for young ladies in the vicinity of the southwest corner of said intersection, and that the defendant Weaver intends and is about to construct a service and filling station on the remaining northeast corner of said intersection; that said premises are located in an exclusive residential section of the city; that plaintiffs have expended large sums of money in so improving their said property on the assumption and belief that said premises were and would continue to be so restricted, and would not be classified as commercial or business property, and that at least a portion, if not all of said premises, has been classified or zoned for residential purposes.

Plaintiffs further alleged that on June 8, 1932, the defendant Weaver procured from the defendant Lightfoot, as building inspector, a permit to erect a filling station on the said northeast corner of said intersection; that said permit was obtained without notice to or the knowledge of the plaintiffs, and that plaintiffs were unaware of the issuance of said permit until February 13, 1932, and at which time the plaintiffs filed objections and protests against the issuance of same with the board of adjustment of the city; that a hearing was had thereon before said board, and on February 16, 1932, the secretary of the said board, acting on behalf of the board, adjudged the issuance of the said permit an error, and instructed the building inspector to stop work under the said permit; that said building inspector treated the objections as an appeal and notified the defendant Weaver that an appeal had been taken from his action in issuing said permit, and directed the said defendant to stop all work in erecting the said station; that on February 23, 1932, the defendant Weaver filed with the board of adjustment a motion to strike the objections and protests on the part of the plaintiffs from the files and records of the said board; that thereafter, on February 26, 1932, the said board, in a regular meeting, with all interested parties present, adjudged and decreed that the board should decline to take jurisdiction in revoking the said permit; that the defendant Weaver has begun prep-

arations to erect the said filling station, and has orally stated that it is his intention to construct same, and that un'ess restrained and enjoined the said defendant will construct same "and cause these plaintiffs irreparable loss and injury for which they have no adequate remedy at law."

The plaintiffs further allege that if it be construed that the defendant has a good and valid permit to construct said filling station, and that plaintiffs are barred from appealing from the action of the said bui'ding inspector to the said board of adjustment, plaintiffs will be deprived of their property without due process of law and in violation and contravention of the Constitution and statutes of the state of Ok'ahoma and of the United States, and that the plaintiffs would suffer irreparable loss and injury and for which they have no adequate remedy at law; that the section of the said ordinance of the city relating to appeals from the action of the building inspector to the board of adjustment has been repealed, but if not so repealed, same is void and unconstitutional and deprives the citizens of Tulsa, including these plaintiffs, of their property without due process of law, and is contrary to and in contravention of the laws and Constitution of the state of Oklahoma and of the United States of America.

The plaintiffs further allege that the said building permit authorizing the construction of such filling station was issued without right or authority and in derogation of the rights of the plaintiffs, and that the construction of same at the location involved would amount to the creation of a nuisance per se; that no valid ordinance designates the property on which the said fil'ing station is about to be constructed as business property; that the defendant Weaver threatens to construct said filling station pursuant to the said purported building permit, and that the defendant Lightfoot is treating and considering the said building permit as valid, and that unless said defendants are restrained and enjoined, said filling station wi'l be constructed, and "these plaintiffs will suffer great and irreparable loss and injury for which they have no adequate remedy at law."

It will be noted that the petition of plaintiffs contains no allegation as to the nature of the proposed service or filling station, except that the construction of same at the location involved "would amount to the creation of a nuisance per se", and that the only allegation as to the anticipated damage is that the construction of the filling station "unless restrained and enjoined will cause these plaintiffs irreparable loss and injury, for which they have no adequate remedy at law."

The defendants answered with a general denial and that the court was without jurisdiction to grant the plaintiffs any relief in that the bui ding permit authorized the construction of the filling station at the location stated; that said location was legally zoned under said zoning ordinance for commercial use, which includes retail filling stations; that pursuant to the said permit the defendant Weaver had caused to be prepared plans for said fil'ing station and had entered into a contract for its construction; that under section 19 of the said zoning ordinance an appeal is provided from the action of the building inspector in issuing a permit to the board of adjustment, which is required to be taken within ten days after such action; that no appeal was taken by anyone within ten days after the issuance of the said permit; that the purported appeal later taken by the plaintiffs to the board of adjustment was on February 16, 1932, without notice to the defendants and without authority of law, and that the board of adjustment obtained no jurisdiction thereunder, and that the purported action of the said board in attempting to revoke the said permit was void; that subsequently, and on February 23rd, the defendant Weaver filed with said board a motion to strike the objections and protests so filed with the board by the plaintiffs on the grounds that same had not been filed within the time prescribed by law; that on February 26th the said board sustained said motion to strike and deleted from its minutes all record of the revocation of the said permit; that thereupon the said board finally held and adjudicated that it had no jurisdiction of such appeal and refused to proceed further; that some of the plaintiffs filed a proceeding denominated an appeal from said action of the board to the district court of Tulsa county, Okla., and the defendant Weaver filed a motion to dismiss said appeal in the said court for want of jurisdiction; that the said motion was heard and sustained; that by virtue of the said judgment of the said district court, the matters and things sought to be herein adjudicated are res adjudicata and the judgment therein is a bar and an estoppel against the plaintiffs herein; and that the defendants in all things complied with the law in making application for said building permit and exercising their legal rights

thereunder, and that the said building permit is valid.

In an amendment to the answer defendants allege that said zoning ordinance was duly passed and approved in the manner required by law, after due notice to property owners, and that the plaintiffs had the right at all times to make application to the legislative body of the city to amend the said ordinance, and could on a proper hearing have submitted to the said board all the questions and objections now sought to be presented; that the said property was incorporated in the city of Tulsa by ordinance No. 3519, passed and approved May 3, 1929, and that property owners had notice of the classification of property prescribed in the zoning ordinance, and that all the p'aintiffs, except one, purchased their property involved subsequent to the said date; that p'aintiffs under said ordinance have no right to an appeal to the action of the building inspector in granting the permit herein, and that if the plaintiffs had any such right to appeal, such right was lost in that the appeal was not taken within the time prescribed.

The trial court in substance found the facts to be that: (1) On January 13, 1924, the "Tulsa zoning ordinance", numbered 2576, was duly passed and approved, containing as a part thereof the maps and plans in evidence, and that the said ordinance c'assified the property of the defendant O. G. Weaver herein as "commercial" and for "commercial use"; (2) that said district and property were at that time without the limits of the city of Tulsa; (3) that said district was annexed to and incorporated in the limits of the said city in 1927; (4) that in April, 1932, the defendant O. G. Weaver owned the lots involved, and made, in regular form, application to the city of Tulsa pursuant to its ordinance, for the permit to erect thereon a filling station of the better class as to size, sty'e, appearance, immediate surroundings, landscaping, and same to be conducted and maintained as an ordinary filling station and in no respect to be maintained in an extraordinary or unusual manner whatever; (5) that pursuant to said application, the building inspector, Ed M. Lightfoot, issued a permit to the defendant O. G. Weaver to erect such filling station on said lot; that the involved premises of the plaintiffs were purchased by all the p'aintiffs save one, subsequent to the taking effect of the said zoning ordinance, and prior to the annexation of said district to the city of Tulsa; and (7) that the said permit

had not been revoked at the time of the institution of this suit. The record and briefs show that the above-stated seven findings are unchallenged by the parties.

The trial court further finds: (8) That all the plaintiffs, except the Monte Cassino School for girls, have maintained their property as residences, and have expended large sums of money in improving same as such upon the assumption and belief that same were and would thereafter be restricted to residential purposes; (9) that the said structures and homes and lots are in a district devoted wholly and exclusively to residential purposes; (10) that the erection of a filling station upon the lots of the defendant O. G. Weaver would work irreparable damage to the plaintiffs; and (11) that the defendant O. G. Weaver purchased his property in 1928. That the defendants except to the above findings 8 to 10, inclusive.

The trial court concluded the law applicable to the facts to be in substance that: (1) Said Tulsa ordinance numbered 2576 was by its terms held in abeyance as to all the properties involved until such time in the future as said properties should be legally incorporated within the city of Tulsa; (2) that the legislative act of the governing body of the city which incorporated the said district in the city limits is valid in all respects; (3) that immediately upon the incorporation of said district, the ordinance and maps zoning and classifying said property became effective and of full force and effect as to same; (4) that said zoning ordinance is constitutional. That the above four conclusions of law on the part of the trial court are unchallenged by either party.

The trial court further concludes that: (5) The plaintiffs are entitled to have the threatened erection of said filling station upon the said lot declared a nuisance; and (6) that the plaintiffs are entitled to the issuance of a permanent injunction against the defendants, or either of them, erecting said proposed, or any, filling station, upon the said lot owned by the defendant O. G. Weaver. That the defendants excepted to said conclusions 5 and 6.

Defendants' first assignment is in substance that under the findings of fact the trial court erred in concluding that the plaintiffs were entitled to have the threatened erection of the filling station dec'ared a nuisance, and in concluding that the plaintiffs are entitled to the issuance of a decree of injunction herein to that effect, since the erection of the said filling station was au-

thorized by a valid zoning ordinance which zoned the intersection involved for commercial purposes, and which ordinance in terms includes thereunder sites for retail filling stations.

The plaintiffs' response is in substance that the building permit issued to the defendants by the building inspector was void for want of notice to the plaintiffs; that the general rule that a business which is authorized by express statutory authority to be established in a designated locality cannot be held a nuisance, while being properly conducted, applies only to businesses authorized by a state statute at a specifically designated place, and does not apply to a business authorized by an ordinance of a municipality based upon a state statute; and that, if said rule was applicable thereto, equity is not powerless to grant relief against such installation as a nuisance in a proper case; and that although the rule prevails in Oklahoma that a filling station is not a nuisance per se, such may be held a nuisance per accidens and its construction in a district zoned for such uses enjoined although it appears that such construction and use were. to be that of the better class of filling stations; and that even though the location was zoned for commercial uses, which included the construction and operation of filling stations, the same was in fact an exclusive residential district and improved as such, and that the installation of a business, of itse'f lawful, in such strictly residential district, which, although properly constructed and conducted, would impair the enjoyment of homes in the neighborhood, and infringe upon the wellbeing, comfort, repose, and enjoyment of the ordinary normal individual residing therein, may be enjoined.

While the plaintiffs did not challenge the validity of the said building permit in the objections filed before the board of adjustment on the ground of failure to give notice, the validity of same for failure to give such notice is challenged in the petition herein. The evidence is that no notice of said application was given either of the plaintiffs and that the plaintiffs had no knowledge of same until after the expiration of more than ten days. The zoning ordinance in evidence does not provide for such notice, and the rule is that in the absence of a provision to the contrary in the zoning ordinance, "the proceedings to procure a building permit are, as a general rule, governed by the same rules as are applicable to the obtaining of municipal permits generally." 43 C. J., "Municipal Corporations", sec. 375.

The record does not disclose that under the ordinance of Tulsa notice to other parties is required generally in obtaining municipal permits, **and the rule is that, where no notice is required, failure to give notice does not affect the validity of the permit.** 43 C. J., "Municipal Corporations", sec. 263.

The function of municipal building permits is to evidence compliance with the applicable ordinances and regulations and that the proposed construction meets building requirements. Where the prerequisite conditions have been complied with on the part of the applicant, the board or official may have no discretion to refuse the permit for some reason other than a noncompliance with the conditions precedent; and such an applicant may invoke the aid of the court to prevent the unreasonable refusal and to compel the granting of the permit. The issuance of such permit is not ordinarily an adjudication of the property rights of third persons. 43 C. J. "Municipal Corporations," secs. 258 and 262.

Counsel for plaintiffs are in error in the position that the Tulsa zoning ordinance did not authorize the erection of a filling station at the intersection involved. It clearly appears from the ordinance and the plats therein referred to and made a part of same, that said intersection was zoned as U-3, and section 3, covering classification of uses, defines Class U-3 as commercial and for the following uses: "(1) All U-1 and Class U-2 uses. (2) Retail and wholesale business."

Section 20 classifies "commercial uses" as inc'uding, among other uses, "filling stations (retail only)." As we have seen, the issuance of a building permit based on this ordinance is only an incident, and the basis of the alleged injury which the plaintiffs are about to suffer is the zoning of the intersection for commercial uses and not the issuance of a permit to construct the filling station.

Since there is now no contention that the zoning ordinance did not zone the said intersection for commercial uses, which authorized the construction thereon of fil'ing stations, or that the defendant did not comply with all the terms of the said zoning ordinance in applying for and securing the permit, the objections filed by the plaintiffs. thereto, the appeals, and the orders and judgment made and entered therein, are all immaterial in the decision of this case, and are not res judicata as to the questions here presented.

What is commonly referred to as the Standard Zoning Enabling Act, which seems to have been first adopted in New York, and which has since been adopted in a number of the states, was adopted by an act of the Legislature of Ok'ahoma in 1923, and is article 10, chap. 33, sections 6170-6179, inclusive, of O. S. 1931 (Session Laws 1923, chap. 178). The need for this legislation is the recognized fact that the vital requirements of growing centers of population necessitate radical modification in the laws ordinarily governing the uses to which property therein may be safely and properly devoted. Where the question under consideration goes to the mutual rights of property owners in a city, which is zoned under a zoning act, in relation to the use of the property for a specific purpose, it is clear that the applicable provisions of the zoning ordinance must be considered. Such provisions may materially change and render inapplicable the general rule.

It is well settled by the decisions of the Supreme Court of the United States, the Supreme Court of Oklahoma, and the appellate courts of other states, that such zoning ordinances as that of the city of Tu'sa are valid enactments, and are not repugnant to the due process of law and equal protection clauses of the federal Constitution or the Constitution of Oklahoma, and that where a particular classification in a comprehensive zoning plan on the part of the legislative authority of the city is attacked, it is assumed that same is fair and reasonable, and where the validity of the classification is fairly debatable, the expressed legislative judgment must be allowed to control, and the court will not substitute its judgment for that of the legislative body of the city, and the conclusion of that body as expressed in the ordinance will not be disturbed, although in the very nature of things such classifications must in many instances be more or less arbitrary. Village of Euclid et al. v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016; Zahn v. Board of Public Works, 274 U. S. 325, 47 S. Ct. 594, 71 L. Ed. 1074; In re Dawson et al., 136 Okla. 113, 277 P. 226; Baxley v. City of Frederick, 133 Okla. 84, 271 P. 257; McCurley v. City of El Reno, 138 Okla. 92, 280 P. 467; Beveridge v. Harper & Turner Oil Trust, 168 Okla. 609, 35 P. (2d) 435; State ex rel. Hunzicker v. Pulliam, 168 Okla. 632, 37 P. (2d) 417; Zahn v. Board of Public Works (Cal.) 234 P. 388; Miller v. Board of Public Works, (Cal.) 234 P. 381, 47 S. Ct. 460, 273 U. S. 781; Freeman v. Board of Adjustment (Mont.) 34 P. (2d) 534; Bove v. Donner-Hanna Coke Corp., 254 N. Y. S. 403; City of Bismarck v. Hughes (N. D.) 208 N. W. 711; Spencer-Sturla Co. v. City of Memphis (Tenn.) 290 S. W. 608.

In re Dawson, supra, this court had under consideration the zoning ordinance of Oklahoma City, which in legal effect is the same as that of Tulsa, and the court held:

"Ordinance No. 2634 of the city of Oklahoma City is a comprehensive zoning ordinance regulating the character of buildings which may be lawfully erected and the character of business that may be lawfully carried on in designated districts. Held, such ordinance is not repugnant to the due process of law and equal protection clauses of the federal Constitution and the Constitution of Oklahoma in its operation against one denied a permit to conduct a funeral home in a district restricted against the conducting of such a business.

"Where the legislative body of a city has declared that a certain district of the city shall be included within a particular classification of a comprehensive zoning plan, and where the classification is attacked as unreasonable, arbitrary or an unequal exercise of power; if the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control and this court will not substitute its judgment for that of the legislative body, and the conclusion of that body will not be disturbed.

"The boundary line of a zoning district must be fixed in some locality. In the very nature of things it must always be more or less arbitrary, because the property on one side of a line cannot be very different from the property on the other side of the line."

In Beveridge v. Harper & Turner Oil Trust, supra, this court announced the applicable rules as follows:

"The power of municipalities to restrict the use of property within their limits as conferred by legislative enactment (secs. 6170-6179, St. 1931) is, when properly and reasonably exercised, authorized under the police power. * * *

"The classification of city property for zoning purposes is in the first instance a matter to be determined by legislative body of the city.

"When the validity of a legislative classification for zoning purposes is fairly debatable, the legislative judgment must be allowed to control. Courts will not substitute their judgment for that of the municipal legislative body. * * *

"Neither the board of adjustment nor the district court on appeal therefrom may grant exceptions to the provisions of the zoning ordinance which violates the spirit thereof,

nor can they or either of them, under the pretext of granting an exception, assume the position of a superior legislative body."

It thus appears on authority of the above cases and many others, some of which are cited below, that it is well settled that:

"Where the legally constituted body, to determine and establish zoning ordinances, has acted within the scope of the police power, courts will not substitute their judgment as to the wisdom or propriety of said action for that of such body. Its discretion is not for review by the courts. Nectow v. City of Cambridge et al., 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842; Standard Oil Co. et al. v. City of Marysville et al., 279 U. S. 582, 49 S. Ct. 430, 73 L. Ed. 856; American Wood Products Co. v. City of Minneapolis et al. (C. C. A.) 35 F. (2d) 657; Marx et al. v. Maybury, Director of Licenses of Washington, et al. (D. C.) 36 F. (2d) 397; Marblehead Land Co et al. v. City of Los Angeles (C. C. A.) 47 F. (2d) 528." Women's Kansas City St. Andrews Society v. Kansas City, Mo., 58 Fed. (2d) 593.

Since it is well settled that the classification made by the municipal legislative bodies in zoning ordinances should not be disturbed when the reasonableness of same is debatable, we deem it proper to direct attention to the fact that while the estimates as to the distances from the proposed filling station to the buildings of the plaintiffs naturally vary, the blueprint, defendant's exhibit 1, is unchallenged, and reveals the said distances as to the school—548 feet; Bishop's, 440 feet; Wilson's, 215 feet; Rader's, 180 feet; Parker's, 172 feet. Defendant's exhibit 3, being official p'at showing the widths and travel lines of streets, shows Twenty-First street and Louis avenue to be 100 feet wide, with the capacity of eight lines of traffic. We do not believe it can be reasonably held that the classification of the intersection for both commercial and residence uses is clearly erroneous.

A drive-in filling station operated in the usual and proper manner for the sa'e of gasoline, oil, and other like commodities, is not a nuisance per se, or in law, that is, a nuisance at all times and under all circumstances, without regard to location, environment, and manner of conduct; however, such fil'ing station may be a nuisance in fact, or per accidens, on account of its location and surroundings and the improper manner in which same may be conducted. Marland Refining Co. v. Hobart, 113 Okla. 36, 237 P. 857; McPherson v. First Presbyterian Church, 120 Okla. 40, 248 P. 561;

Magnolia Petroleum Co. v. Wright, 124 Okla. 55, 254 P. 41.

Such being the business status of filling stations, it is clear that the legislative body of the city of Tulsa had the power under the said Standard Zoning Enabling Act to classify retail filling stations as being proper commercial installations. That such filling stations were so classified in the Tulsa zoning ordinance is no longer questioned, and that the intersection of Twenty-First street and Louis avenue was designated for commercial use is clear from the plat referred to and made a part of the said ordinance.

It is obvious that under this situation the control'ing question is as to whether or not the construction of a retail filling station in a district so zoned for commercial uses, may be enjoined by property holders in the district, where the trial court finds, and the findings are supported by the evidence and unchallenged by the parties, and must therefore be accepted as true in this court, that a building permit was duly and regularly applied for and issued to the defendants pursuant to said ordinance, authorizing the construction and proper conduct of such fi'ling station at the designated location, and that the installation was to be "a filling station for retail business only, of the better class as to size, appearance, and its immediate surroundings, such as landscaping, the same to be conducted and maintained as an ordinary filling station and in no respect to be maintained in an extraordinary or unusual manner whatever."

The contention that the Tulsa zoning ordinance is not tantamount to a state statute as to zoning classifications is erroneous. The general rule is that "municipal ordinances or regulations duly enacted by municipal governing bodies, in pursuance of statutory authority and within the powers that a municipal corporation ordinarily has, have within the territorial jurisdiction of the corporation, and as to those persons against whom the municipal power may be exercised, the same force and effect as statutes or legislative enactments."

The case of Des Moines Gas Co. v. City of Des Moines, 44 Iowa, 505, is an early and leading case so holding in the following language:

"There can be no doubt but that it is competent for the General Assembly to delegate to corporations of this character the power to enact ordinances 'which, when authorized, have the force and effect of laws passed by

the Legislature of the state within the corporate limits.' 1 Dillon on Municipal Corporations, par. 245. Within the sphere of their delegated powers municipal corporations have as absolute control as the General Assembly would have if it never had delegated such powers and exercised them by its own laws. Taylor v. Carondelet, 22 Mo. 110; Heland v. Lovel, 3 Allen, 408. * * *

"The discretion of such corporations within the sphere of their powers is as wide as that possessed by the government of the state. City of St. Louis v. Boffinger, 19 Mo. 15. And discretionary powers are to be exercised according to their judgment as to the necessity or expediency of any given measure. Kelley v. Milwaukee, 18 Wis. 85. * * *

"The General Assembly is a co-ordinate branch of the state government, and so is the law-making power of public municipal corporations within the prescribed limits. It is no more competent for the judiciary to interfere with the legislative acts of the one than the other."

When considering the question as to whether an ordinance of a city impaired the obligation of a contract in violation of the Constitution of the United States (art. 1, sec. 10, the Supreme Court of the United States in St. Paul Gaslight Co. v. St. Paul, 181 U. S. 142, 21 S. Ct. 575, 45 L. Ed. 788, held:

"It is no longer open to question that 'a by-law or ordinance of a municipal corporation may be such an exercise of legislative power delegated by the Legislature to the corporation as a political subdivision of the state, having all the force of law within the limits of the municipality, that it may properly be considered as a law, within the meaning of this article of the Constitution of the United States.' New Orleans Waterworks v. Louisiana Sugar Ref. Co., 125 U. S. 18, 31, 31 L. Ed. 612, 8 Sup. Ct. Rep. 741, 748; Hamilton Gaslight & Coke Co. v. Hamilton City, 146 U. S. 258, 36 L. Ed. 963, 13 Sup. Ct. Rep. 90; Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 43 L. Ed. 341, 19 Sup. Ct. Rep. 77."

In National Fireproofing Co. v. Kelley, 253 Mass. 344, 148 N. E. 805 it is held:

"The building laws having been authorized by statute, and no violation of the Constitution of the commonwealth appearing, their provisions upon enactment had the force of law. In re Vandine, Petitioner, 6 Pick. 187, 17 Am. Dec. 351; Gilmore v. Holt, 4 Pick. 258, 264; Heland v. Lowell, 3 Allen, 407, 408, 81 Am. Dec. 670: Tuttle v. Lawrence, 119 Mass. 276. 278: Commonwealth v. Plaisted. 148 Mass. 375, 382, 19 N. E. 224, 2 L. R. A. 142, 12 Am. St. Rep. 566; Mulvey v. Boston, 197 Mass. 178, 83 N. E. 402, 14 Ann. Cas. 349; G. L. c. 40, s. 21."

In Town of Jennings v. Pappenfuss, 129

Okla. 85, 263 P. 456, the petition alleged that the sewer system and septic tank of the town was so operated as to constitute a nuisance to the property of the plaintiff, and one of the defenses on the part of the defendant town was that under the provisions of section 11492, O. S. 1931, the said sewer system and septic tank could not be deemed a nuisance in that the same was constructed and maintained under the express authority of a state statute. This court denied the soundness of the defense in the following language:

"The answer to such an argument is that the sewer system is not condemned as a nuisance, but the manner of maintenance is the thing declared to be a nuisance, just as slaughterhouses have been declared to be nuisances by reason of their condition."

In Dupont De Nemours Powder Co. v. Dodson et al., 49 Okla. 58, 150 P. 1085, the plaintiffs sought a decree enjoining a defendant from erecting and maintaining a powder house and magazine at a described location, which was selected and designated under a public health and safety statute of the state for the storage of explosives. The trial court made and entered a decree enjoining the defendant from constructing the magazine. This court in reversing the decree assumed that the petition alleged and the evidence established a situation which ordinarily would be held sufficient to constitute a nuisance and to entitle the plaintiffs to a decree enjoining the construction of the said magazine; however, the court held that in the circumstances of the case the plaintiffs were not entitled to injunctive relief. The circumstances which the court held were sufficient to take the case out of the ordinary rule were that the magazine was being constructed under the provisions of a statute relating to the public health, which regulates the business of manufacturing, handling, or storing explosives, and that the construction of the magazine should not be enjoined for the reason that another statute (sec. 4253, R. L. 1910, sec. 11492, O. S. 1931) provides that "nothing which is done or maintained under the express authority of a statute can be deemed a nuisance."

The pertinent provisions of the said statute relating to the public health and safety were in substance that no explosives should be manufactured or stored in certain described limits and places; that the procedure for the designation of magazines for such storage should in substance be that the party desiring to locate same should select the site and file with the Chief Mine Inspector an

application setting forth said specified facts; that upon an examination of the application, in the event the allegations of same were found sufficient and true, the Chief Mine Inspector should then grant a certificate approving the location and maintenance of the magazine. It will be noted that the health and safety statute did not designate a location or locations suitable for magazines, but delegated that duty to the Chief Mine Inspector, while the Tulsa zoning ordinance, enacted under the authority of the State Zoning Enabling Act, specifically zoned and designated the intersection of Twenty-First street and Louis avenue, city of Tulsa, as being suitable for the location of filling stations.

In this Dupont Case, as stated by the court, the evidence shows that the said provisions of the statute were fully complied with by the defendant, and the court holds:

"In such circumstances there is no escape from the conclusion that the storage house herein complained of was erected and is maintained under the express authority of a statute, and therefore falls within the protection of section 4253, supra, and cannot be deemed a nuisance."

It should be held in mind that in this DuPont Case, as well as in the case at bar, there is no question relating to improper operation of the installation. The question in each case goes to the right of the defendant to construct and operate the installation even should same be operated in the most perfect and careful manner. In holding that in such situation the plaintiffs were not entitled to an injunctive decree, the court reasoned and cited authority as follows:

"It seems to be well settled that, where one has the sanction of the state for what he does, unless he commits a fault in the manner of doing it, he is completely justified, provided the Legislature has the constitutional power to act. Bellinger v. New York Central R. R., 23 N. Y. 42; Currier v. West Side E. P. R. Co., 6 Blatchf. C. C. 487, Fed. Cas. No. 3493; Williams v. New York Central R. R. Co., 18 Barb. (N. Y.) 222. This upon the principle that, when the Legislature allows or directs that to be done which would otherwise be a nuisance, it must be presumed that the Legislature is the proper judge of what the public good requires, unless carried to such an extent that it can fairly be said to be an unwholesome and unreasonable law. Sawyer v. Davis, 136 Mass. 239, 49 Am. Rep. 27."

It thus appears that the statutory basis of the proceedings in this Dupont Case and in the case at bar are in effect identical, except that there was no specific legislative designation of the location of the magazine involved, and the location was left to the selection of the party desiring same subject to the approval of the Chief Mine Inspector, while the zoning and designation of the intersection of Twenty-First street and Louis avenue, as being proper for the location of retail filling stations, was specifically designated in a plat made a part of the zoning ordinance, that is, in the Dupont Case the designation of the location of the magazine was delegated to the Chief Mine Inspector, while in the case at bar the zoning ordinance definitely designated the location suitable for filling stations. That the rule applicable where no location was designated in the legislative act, or designated by some officer acting under legislative authority, should not be applied in the case at bar, and that the conclusion would be the same, whether the designation of the location was delegated to an official or stated in the legislative act, is held in this Dupont Case as follows:

"The principle is invoked by counsel for defendant in error that, where a person is given authority by permission of statute to carry on a certain trade, business, or occupation, or to erect a structure, and the locality is not designated, the person is not thereby authorized to carry on such trade, business, or occupation, or to erect such structure at any place he may think proper, but must act with proper regard for the rights of others; and if by his act a nuisance is created, the statutes will not operate to exempt him from liability. This is a well-recognized principle of law, but the instant case does not fall within it, for the reason that, whilst the powder company originally selected the site for its storage house, the Chief Mine Inspector, pursuant to section 6969, supra, examined the statement filed with him by the powder company, and after a personal examination of such storehouse and magazine found the site thereof to be located at a safe distance from the nearest factory, workshop, occupied dwelling, etc., and upon finding such statement to be true issued a certificate approving the plans, location, and maintenance of such storehouse at the identical spot at which the same was located by the powder company. Clearly this is not a case where the locality is not designated."

Counsel for the plaintiffs strongly rely upon Champlin Refining Co. v. Dugan, 133 Okla. 20, 270 P. 559, as supporting the proposition that the prosecution of a lawful business in a strictly residential district, which impairs the enjoyment of homes in the neighborhood thereof and the comfort and repose of normal individuals residing therein, may be enjoined. The plaintiffs sought injunctive relief against the construction and operation

of a filling station in an exclusively residential district of the city of Enid. It did not appear that a zoning ordinance was in force in Enid. The defendant had sought to secure a building permit for the erection of said filling station on the lot involved and same had been refused. The plaintiffs alleged and the court held that the evidence supported the allegations that the proposed location was in an exclusively residential district; that the location adjoined the home of one of the plaintiffs, and was within 16 feet of his residence, and within 84 feet of the home of another plaintiff; that it was proposed to operate the filling station from about 6 a. m. until 11 p. m. each day including Sunday, and on that account "it would become and cause 'a continuous and physical discomfort and mental annoyance to the plaintiffs and their families to such an extent that they cannot enjoy the quiet and peaceful comforts of their own homes and properties; that the operation of the filling station as the defendant is threatening to build would unlawfully annoy and disturb the plaintiffs and their families in the enjoyment and in the use of their own homes and properties constituting a continuous and threatened daily and nightly nuisance, irreparable in damages.'" It is obvious that the controlling question under consideration in the case at bar was not involved in the Champlin Case.

The trial court entered a decree enjoining the construction and operation of the filling station and the defendant appealed therefrom. It appears from the above that the only question was as to whether under the allegations and facts a court of equity should enjoin the construction and operation of the filling station, and this court answered same affirmatively as follows:

"When the prosecution of a business, of itself lawful, in a strictly residential district, impairs the enjoyment of homes in the neighborhood, and infringes upon the well-being, comfort, repose, and enjoyment of the ordinary normal individual residing therein, the carrying on of such business, in such locality, becomes a nuisance and may be enjoined. * * *

"Though every one has the right to the reasonable use and enjoyment of his own property, he may not so use it as to unreasonably deprive an adjacent owner of the lawful use and enjoyment of his property, and one using his property in an unwarrantable manner, and thereby injuring the comfort, health, and safety of another, creates a 'nuisance,' which may be enjoined at the suit of the person so injured."

The rules announced in this Champlin Case are sound, but are clearly inapplicable in the case at bar where the controlling question is as to the mutual rights of the parties under the provisions of the zoning ordinance.

The plaintiffs rely upon Williams et al. v. Bluebird Laundry Co. (Cal. App.) 259 P. 484, as supporting the contention that even though the intersection was so zoned for commercial uses, which included the construction and operation of a retail' filling station, the installation of a filling station in the strictly residential district, which, although properly constructed and conducted, would impair the enjoyment of the homes in the neighborhood and infringe upon the comfort, repose and enjoyment thereof by normal individuals, should be enjoined.

The relief sought in this cited case was an injunction against the operation of a laundry in an improper manner and against the erection of an addition thereto just across the street which plaintiffs allege would be likewise operated in an improper manner. As the Court of Appeals states:

"The complaint alleged that at the establishment being operated when suit was filed, unwashed laundry was strewn upon the sidewalk which emitted offensive odors, machinery was operated late at night which caused loud and disturbing noises to nearby residents, crude oil was burned which gave off heavy black smoke and soot, and an offensive odor was created by materials used in operating the laundry, all of which created a nuisance and were offensive to the senses and deleterious to the health of the plaintiffs; that the defendant had begun the construction of another laundry across the street from the one first mentioned, which would be operated in the same manner and under the same conditions as the old laundry, and which also would create a nuisance. Issue having been joined, and a trial had upon the pleadings so framed, the trial court found the foregoing facts to be true, and rendered judgment in favor of the plaintiffs, enjoining the defendant from operating machinery in either laundry between the hours of 9 o'clock p. m. and 6 o'clock a. m. of each day, and from causing loud noises, creating offensive odors, black smoke, or soot, and from so operating either laundry as through any of the last-mentioned causes, or in any manner, to render them deleterious to the health of the plaintiffs. * * *

"From the evidence introduced by the plaintiffs it appears that the Bluebird laundry was operated daily, frequently on Sunday, and at times until 11 o'clock or later at night; that a shrill whistle was blown mornings, at noon, and in the evenings; that the boilers were often blown out, causing

loud noises and filth to permeate the air; the machinery rumbled and roared like 'the billows at the beach'; thick, heavy, oily smoke emanated from the laundry, which settled upon the outside of houses, and inside upon the furniture and linen, covering them with a dark, greasy substance which it was found difficult, or impossible, to remove; soot and grease were deposited upon the grass and flowers of neighboring yards to a distance of 500 feet in all directions, which discolored and wilted vegetation; obnoxious, offensive odors from chemicals or substances used in the laundry floated throughout the community; that during the early part of each week, for two or three days at a time, large quantities of unwashed laundry which gave off offensive odors were piled on the sidewalks, and which also blocked the walks, requiring school children and others desiring to pass to travel in the middle of the street or else go around the block; that as a result of these things roomers had been compelled to move from the neighborhood, and permanent residents in ill health were constantly irritated and prevented from sleeping at night. There is in the record an abundance of evidence of these noises, odors, blocking of sidewalks, soot and grease deposits. Some of the witnesses swore that at times the air was so dense with pungent odors as to cause violent coughing and sneezing."

As to the addition to the said laundry the court states:

"It appears that application was made to the city of Los Angeles for a permit to build an addition to the old laundry; that the defendant commenced the construction of another laundry across the street from the one in operation, and intended using electric power, but that the oil burners would be maintained in the old plant, and steampiped under the street to the new one, where the actual washing was to be done."

It further appeared that upon the visit of the Chancellor to the laundry during the progress of the trial, the defendant had perpetrated a fraud by suppressing the obnoxious features usually occurring in the operating of the laundry, and the Court of Appeals held:

"Upon the maxim falsus in uno, falsus in omnibus, the court would have been warranted in disbelieving the representations of the defendant and its witnesses concerning the alleged harmless and inoffensive means and methods to be employed in the laundry under construction, and would have been justified in concluding that unless restrained the objectionable elements involved in the operation of the old laundry would be continued in the addition. * * *

"The court did not grant the injunction prayed by the plaintiffs, restraining the operation of both laundries, but enjoined the defendant from so operating either laundry as to be deleterious to the health of the plaintiffs, which we think was not improper in view of all of the evidence before it. In McIntosh v. Brimmer, 68 Cal. App. 770, 230 P. 203, it was said:

" 'Where the injury complained of results from a business which is not per se a nuisance, it being caused only by reason of the manner in which the business is conducted or by the surrounding circumstances, it is always proper for the court so to frame its decree that defendant's business will not be absolutely prohibited, if this can be done and still give to plaintiff the relief to which he is entitled. Collins v. Wayne Iron Works, 227 Pa. 326 (76 A. 24); 20 R. C. L. 482.' "

As stated in paragraphs 3, 4, and 10 of the syllabus, the court held:

"That district was zoned to permit operation of laundries therein did not justify creation or continuance of a private nuisance by owners of laundry so as to preclude injunctive relief to persons building residences in the vicinity on the theory that they must submit to the discomforts and injuries ordinarily incident to operation of similar industries in the manner in which they are customarily conducted.

"Evidence as to noises, noxious odors, blocking of sidewalks, soot and grease deposits resulting from operation of defendant's laundry, held to warrant finding that nuisance was created by such operation, entitling plaintiffs to injunction. * * *

"Where injury complained of resulted from manner of operating laundry business, which is not per se a nuisance, court properly refused to restrain operation of laundry, but enjoined defendant owner from so operating the laundry or a new one to be constructed by it as to be deleterious to the health of plaintiffs, residents of the vicinity."

With reference to the right of property owners to injunctive relief against the operation of a business which has been established in a particular location under a permit issued by virtue of the provisions of a municipal ordinance, the Court of Appeals held:

"The operation of a business under municipal permission does not justify the creation or continuance of a private nuisance. Strong v. Sullivan, 180 Cal. 331, 181 P. 59, 4 A. L. R. 343; Judson v. Los Angeles Suburban Co., 157 Cal. 168, 106 P. 581, 26 L. R. A. (N. S.) 183 21 Ann. Cas. 1247; Sullivan v. Royer. 72 Cal. 248 13 P. 655, 1 Am. St. Rep. 51; Tuebner v. California St. R. Co., 66 Cal. 171, 4 P. 1162; Humphrey v. Dunnells, 21 Cal. App. 312, 131 P. 761; Coats v. Atchi-

son, T. & S. F. R. Co., 1 Cal. App. 441, 82 P. 640."

An examination of the last-above cited cases reveals that in Strong v. Sullivan, supra, an injunction was issued against the proprietor of a portable lunch wagon under license from the city, who parked same so as to obstruct the front of plaintiff's place of business; that in Humphrey v. Dunnells, supra, the action was to abate a nuisance created by the planting of trees in a street designed for vehicles, in such places, size and number as to obstruct ingress and egress to the property of an abutting owner. In Judson v. Los Angeles, etc., supra, the action was for damages and for the abatement of a nuisance created by the operation of a gas factory, and while no zoning ordinance was involved, the court held that "in this, as in any other sort of lawful business, the person conducting it is subject to the rule sic utere tuo ut alienum non laedas, even when operating under municipal permission or under public obligation to furnish a commodity." In Coats v. A., T. & S. F. Ry. Co., supra, it was held that a railroad company which maintained its road under a permit issued on the part of the city was liable for injury to an abutting property holder on account of obstruction of access to the property through the maintenance of an embankment; and in Sullivan v. Royer, supra, where the board of supervisors licensed the defendant to erect and maintain a steam engine, it was held that such license did not justify the creation of a nuisance as a result of the issuance of soot in that it was not shown that the smokestack might not have been easily used in such a way that such soot would not have issued therefrom.

It thus appears that the Bluebird Laundry Case, and the authorities cited therein, as well as the cases of Thompson v. Kraft Cheese Co. (Cal.) 291 P. 204, and Lennon v. City of Butte (Mont.) 214 P. 1101, presented phases of equitable relief against the improper conduct of municipally licensed businesses, and did not present, discuss or decide the question presented in the case at bar and are not in point here.

Cities Service Oil Co. v. Roberts, 62 Fed. (2d) 579, is also cited by counsel for plaintiffs as sustaining the injunction decree in the trial court against the defendant using a certain lot in Pawhuska as a filling station site. Pawhuska did not have a zoning ordinance and the controlling question here involved was not presented or decided. The trial court found the district involved to be an exclusive residential district, and that finding was sustained. It further appeared that the defendant knew the nature of the district and that it was proposing to embark in a business which would annoy the residents of the heart of the residential section. The Circuit Court of Appeals affirmed the decree of the trial court and cited Champlin Refining Co. v. Dugan, supra, and other similar cases, decided by this court, as supporting the decree, and the case is not in point here.

All the other cases cited by counsel for the parties are similar in the nature of their holdings to the above cases, except that same are not so nearly in point, and the discussion of same would serve no useful purpose.

The second and third assignments on behalf of the defendant are in substance that the trial court erred in finding that all the plaintiffs, with the exception of the school for girls, have maintained their property as residences; expended large sums of money for improvements thereon on the assumption and belief that same was and would remain restricted for residential purposes; and that the structures and homes of such plaintiffs are in a district exclusively devoted to residential purposes.

These findings, other than the one relating to the assumption and belief of the plaintiffs, go to the actual nature of the intersection and are supported by the evidence, when the standard fixed in the decisions of this court is employed; however, such facts as to the past or present status of the intersection are not controlling where it appears, as in the case at bar, that the legislative body of the city, taking into consideration the location of the intersection, the future growth of the city, and the needs of the people, have reasonably deemed it proper to classify the intersection for commercial uses.

In Zahn v. Board of Public Works (Cal.) 234 P. 388, it is held:

"Fact that, at convenient intervals along zone restricted to residential purposes, property was zoned for business purposes, thus providing adequate business districts to serve immediate needs of particular neighborhoods, did not render zoning ordinance void as being unreasonable or discriminatory. * * *

"The power of city council to zone is not limited to protection of established districts, but zoning in its best sense must also look forward in development of new districts ac-

cording to comprehensive plan, having welfare of city as its basis."

The fact that the property owners improved part of the intersection for residence purposes and intended and desired that same should so remain, and erroneously assumed and believed that the district was and would remain restricted for residence purposes, is immaterial. De Lano v. City of Tulsa, 26 Fed. (2d) 640.

The fourth and eighth assignments are in substance that the finding of the trial court that the erection of a filling station by the defendant on the lot described would work irreparable damage to the plaintiffs is not supported by the evidence and that proof of alleged damage resulting to property owners on that account is incompetent, irrelevant, and immaterial, since the erection of the filling station was expressly authorized by law.

Whether such finding is or is not supported by the evidence is immaterial in the determination of the question as to whether the plaintiffs are entitled to injunctive relief in this suit. As pointed out above, the trial court found that the intersection involved was incorporated in the limits of the city in 1927; that said intersection was zoned for commercial uses, which, the ordinance shows, includes retail filling stations; that pursuant to the provisions of the zoning ordinance application was made by and a permit issued to the defendant in regular form to erect thereat a filling station of the better class as to size, style, appearance, immediate surroundings, landscaping, and to be conducted and maintained as an ordinary filling station and in no respect to be maintained in any extraordinary or unusual manner whatever; and that the said permit had not been revoked. Such being the unchallenged findings of the trial court, the plaintiffs are not entitled to a decree enjoining the construction of the filling station at the said intersection, even though it appeared that same would cause irreparable injury to the property of the plaintiffs, unless it is further made to appear that such injury would result from improper construction or operation.

The fifth assignment is in substance that the trial court's conclusions of law numbered 5 and 6, being in substance that the plaintiffs are entitled to have the threatened erection of the said filling station declared a nuisance and permanently enjoined, are contrary to law and equity even though said findings of

fact numbered 8, 9, and 10 are held to be supported by the evidence.

Findings of fact 8, 9, and 10 are in substance that the plaintiffs, with the exception of the Monte Cassino school for girls, have maintained their properties as residences and have expended large sums of money thereon upon the assumption and belief that same were at the time and would remain restricted for residential purposes; that the said district is devoted wholly and exclusively to residential purposes, and that the erection of the filling station would work irreparable damage to the plaintiffs. As pointed out herein these findings of fact are immaterial. Under the holding above, said conclusions 5 and 6 are contrary to law and equity.

The sixth assignment is that under findings 1, 2, 3, 4, 5, 6, 7, and 11 and conclusions 1, 2, 3, and 4, supra, the defendants were entitled to a decree denying the injunctive relief and for the dissolution of the temporary injunction, and that conclusions 5 and 6 and the decree herein are contrary to the first above-stated findings and conclusions, and are not supported by the evidence.

That the defendants were entitled to have a decree denying to the plaintiffs injunctive relief against the erection of the filling station and for the dissolution of the temporary injunction theretofore issued, sufficiently appears from the foregoing.

Defendant's seventh assignment of error is that the trial court erred in not concluding that the plaintiffs had a plain, adequate and speedy remedy at law under the provisions of the said zoning ordinance, and erred in granting equitable relief in this suit. It is well settled that property owners are entitled to injunctive relief against the creation or maintenance of a nuisance to their damage in proper cases, and that ordinarily an action for the recovery of damages is not deemed adequate relief; however, under the found and admitted facts in the case at bar, no such cause for equitable relief exists.

Aside from the provisions in the fourth grammatical paragraph of section 19 of the Tulsa zoning ordinance, relating to appeals from the actions of the building inspector to the board of adjustment, said section 19 in the first grammatical paragraph, among other things, provides:

"Where there are practical difficulties or unnecessary hardships in the way of carry-

ing out the strict letter of the provisions of this ordinance, the board of adjustment shall have power in a specific case to vary any such provision in harmony with its general purpose and intent so that the public health, safety, convenience, prosperity, and general welfare may be secured and substantial justice done."

This right of the property owner to make application to the board of adjustment to vary or modify any provision of the ordinance that is calculated to work special injury or hardship, is at all times open to property owners, after the enactment of the zoning ordinance, and before the actual execution of the provisions of said ordinance, and is independent of the provision relating to an appeal from any action taken by the building inspector. The above-quoted provision is identical with that found in the zoning ordinance of New York City and Utica, New York, and it is held by the New York courts, as well as other appellate courts, that such delegation or power to the board is valid, was intended to save the property owners from unwarranted injury, and that the language thereof should be liberally construed. St. Basil's Church of Utica v. Kerner et al., 211 N. Y. S. 470; People v. Board of Appeals (N. Y.) 138 N. E. 416; People v. Walsh (N. Y.) 155 N. E. 575; Anderson v. Jester (Iowa) 221 N. W. 354; Freeman v. Board of Adjustment (Mont.) 34 P. (2d) 534; Bradley v. Board of Zoning Adjustment (Mass.) 150 N. E. 892.

The plaintiffs for some years prior to the issuance of the building permit herein, and without regard to same, and at any and all times prior to the actual commencement of the construction of the filling station, clearly possessed the right and remedy of applying to the board of adjustment for the amendment or modification of the classification of the property at the intersection here involved. It is evident from the objections filed to the issuance of the building permit that same did not constitute an effort to secure an amendment or modification of such classification of the intersection, in that the objections were in substance that the said intersection was zoned for exclusively residential purposes; had never been zoned for commercial purposes; that the filling station proposed was of itself a nuisance per se; and that no valid ordinance had been passed which classified the intersection for commercial property. The conclusion is inevitable that the plaintiffs attacked the validity of the classification of the intersection and made no attempt during all the years the said zoning ordinance was in force and effect to pursue the right provided therein under which the plaintiffs were provided with a remedy for the alleged injury. In Osborn v. Town of Darien (Conn.) 175 Atl. 578, the zoning ordinance involved contained a similar provision, and the court held:

"The board of adjustment is given authority by the act creating the zoning commission to alter, vary, or modify the application of the zoning regulations, but the appeal to it in no way invoked the exercise of that power, and no question as to it could arise upon the appeal to the court. In the absence of action by the board under this power, the fact that the application of the regulations to her property would cause the plaintiff loss and hardship by preventing her from carrying out the contemplated changes upon her property would not justify an exemption from the regulations in her favor; individual hardship and loss is a necessary accompaniment of zoning in any community; and such loss must be borne in order to make possible the broader advantages secured by it to the community as a whole. Thayer v. Board of Appeals, 114 Conn. 15, 22, 157 A. 273; Comley, State's Attorney, ex rel. Rowell v. Boyle, 115 Conn. 406, 411, 162 A. 26."

Such being the situation, it is well settled that equity will not afford relief. Fast v. Rogers et al., 30 Okla. 289, 119 P. 241; Stoner et al. v. Hyde, 82 Okla. 5, 198 P. 328; Worley et al. v. Mundell, 123 Okla. 237, 253 P. 42; First National Bank v. Continental Supply Co., 125 Okla. 174, 256 P. 902.

The ninth and last assignment is that the trial court erred in discharging the injunction bond filed herein, and in discharging and exonerating the principal and bondsmen thereupon until final determination of this action. The record shows that in obtaining the temporary injunction herein the plaintiffs executed a bond in which they and their sureties bound themselves to pay to the defendant any damages which may be sustained, including a reasonable attorneys' fee, by reason of the issuance of the said injunction, if it should be finally decided that said injunction should not have been granted. The trial court, as a part of the decree granting the plaintiffs a permanent injunction against the defendant, ordered that the said bond be discharged and exonerated. The making of such order a part of the said decree on the merits was proper; however, the decree and no part of same has become final, and upon the reversal of the decree the said bond remains in full force and effect pending a final decree as to whether or not the

plaintiffs were entitled to the said temporary injunction. First National Bank of Healdton v. Duncan, 142 Okla. 121, 285 P. 957; Gibson Oil Co. v. Kelley et al., 169 Okla. 218, 36 P. (2d) 1111.

It is evident from the objections filed with and the proceedings had before the board of adjustment and the allegations of the petition herein, that the erroneous theory of the plaintiffs was that the intersection involved was not zoned for commercial uses, which included the construction and operation of retail drive-in filling stations, but was zoned for and was actually an exclusive residential section; that a drive-in filling station, although properly constructed and operated, was either a nuisance per se, or at least a nuisance, where operated in an exclusive residential section. The controlling effect of the zoning of the intersection for commercial purposes upon the rights of the plaintiffs to injunctive relief against the erection and operation in the proper manner of a filling station at that point was apparently overlooked by the learned trial judge in the hurry and confusion of the trial.

Decree reversed and cause remanded.

The Supreme Court acknowledges the aid of Attorneys Chas. E. McPherren, Hubert Ambrister, and Calvin Jones in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of the law and facts was prepared by Mr. McPherren and approved by Mr. Ambrister and Mr. Jones, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, WELCH, and CORN, JJ., concur.