DAVIDSON COUNTY, TENNESSEE, etc. et al., ex rel.

*v,*

D. A. HARMON, d/b/a HARMON CONSTRUCTION
COMPANY et al.

(*Nashville,* December Term, 1955.)

Opinion filed July 20, 1956.

576

Elmer Davies, Jr., County Attorney, Nashville, for appellant.

Allison B. Humphreys, Solicitor General, Nat Tipton, Advocate General, and Milton P. Rice, Assistant Attorney General, for appellees.

Mr. Justice Burnett delivered the opinion of the Court.

The question presented by this suit is whether or not the County may enforce its zoning ordinance against the State in the construction of a building to be used as a receiving and treatment center in connection with the Central State Hospital, located on the Murfreesboro Pike in Davidson County.

The bill was filed by the County, its Building Commissioner, and County Attorney against the contracting company who was constructing a building at the Central State Hospital; Frank G. Clement, Governor of the State of Tennessee; and Dr. Cyril J. Ruilmann, Commissioner of Mental Health of the State of Tennessee. The bill alleges that these parties by virtue of Chapter 297 of the Public Acts of Tennessee, for the year 1955, were constructing a building at the Central State Hospital, located on Murfreesboro Pike in Davidson County, to be used as a receiving and treatment center for said hospital which building violated the zoning code of Davidson County in that the building to be erected was 33 feet 11 1/4 inches higher than the 40 feet maximum allowed in an agricultural district where the building was to be placed; that the building was to be five stories in height, where 2½ stories were the maximum as allowed under the building code for a district of the kind; and that the building was being constructed within less than 4,000 feet of and in a direct line with the northwest and southeast runway of the Nashville Municipal Airport, thus

creating a continuing hazard to passengers in air transportation and to prospective patients of said State institution in violation of Section 17, Subsection 3, of the Zoning regulations applying to Davidson County. These Zoning regulations were established by the Quarterly County Court of Davidson County pursuant to authority given them by Chapter 473 of the Private Acts of 1939.

The bill also states that the agents of the State of Tennessee had applied for a certificate for this construction and upon being denied it had appealed and the Davidson County Board of Zoning Appeals had likewise denied them a certificate for this construction and that the building was proceeding to plan in violation of the Zoning requirements of the County.

The bill was demurred to on four grounds to-wit: (1) that Frank G. Clement is sued as Governor and as such he is immune from suit; (2) that construction is pursuant to Chapter 297 of the Public Acts of the General Assembly of Tennessee, 1955 and that thus is within the soverign authority of the State of Tennessee and not controlled by nor subject to the private and public acts made the basis of complainants' suit; (3) that the Construction Company is a contractor working on behalf of the State of Tennessee and in doing so is protected by the soverign rights of the State, and (4) that it appears from the bill that the complainants had knowledge of this construction some months prior to the filing of the bill and the bill is demurred to because of laches.

The Chancellor sustained the demurrer *in toto* and dismissed the bill. The complainants, appellants here, have seasonably perfected their appeal. Assignments of error and able briefs have been filed by both sides and we have heard argument thereon. We now, after giving

the matter considerable thought and study, have the suit for disposition.

We will not take up the numerous assignments *seriatim* because we feel that they can all be answered more simply by the conclusions that we have reached which will hereinafter be stated.

The statutes of the State impose upon the Department of Mental Health the duty of providing care for the mentally ill. This duty contemplates the construction of institutional buildings as the need arises. Section 4-321, T.C.A. Recognizing the need for new buildings the Legislature of the General Assembly of 1955 passed Chapter 297 of the Public Acts of that year which according to the allegations of the bill required:

"The Governor and Commissioner of Mental Health are authorized to employ architects, to advertise for bids, and to let contracts for improvements and additions in connection with the Central State Hospital located on Murfreesboro Pike in Davidson County, Tennessee."

In the carrying out of this requirement of the Legislature to build these buildings it is necessary that the buildings be where the Central State Hospital is now located. Section 33-601, T.C.A.

Acting pursuant to these statutes and general acts early in 1955 the authorized officers of the State commenced the construction of a building for the purpose of a treatment center at the Central State Hospital. On August 25, 1955, the County was notified of this and were advised by an inspection of the premises that the buildings were to proceed at a great cost. This suit was commenced on March 6, 1956 or some months after the County authorities were advised of this fact.

The only relief sought by the original bill was an immediate injunction, to make permanent upon the hearing, enjoining the construction of the building as being contrary to the ordinance or resolution No. 53, adopted pursuant to Chapter 473 of the Private Acts of 1939, applying to Davidson County. In addition to demurring to the bill the State filed a sworn answer for the avowed purpose of controverting an allegation of the original bill that the construction of the building created a continuing hazard to passengers in air transportation and prospective patients of Central State Hospital. The Chancellor treated this sworn bill as an affidavit in his consideration of whether or not a temporary injunction should be granted.

· Chapter 473 of the Private Acts of 1939 which is the basis of this lawsuit, does not, by express language or by necessary implication apply to the State of Tennessee. Upon a careful reading of this Act it is rather plain to us that many provisions of the Act imply a contrary intention. When we know as a matter of fact that the Capitol of the State government is located in Davidson County this within itself would make it more necessary for this private zoning law to expressly include its application to the State buildings, etc., if the Act were to apply to any acts the State attempted to do. It is inconceivable that the General Assembly ever intended such provision to apply to the State of Tennessee.

Under the Act the District Attorney General shall proceed to prevent violation of regulations adopted under the Act, for necessary actions at law or equity. Under the Constitution and the system of government under which we operate, the District Attorney General is a representative of the State of Tennessee. Thus it seems to

us very obvious from this provision alone, aside from many others, that it is inconceivable to think that the Legislature intended for this Private Act to apply to the State since the District Attorney General represents the State of Tennessee and would be authorized under the Act to proceed against the very one that he represented. And again there is a provision in the Act which requires that a regional planning commission, which by law is created by the State Planning Commission, shall certify to the Quarterly County Court a zoning plan from which the Quarterly County Court must adopt as zoning plan for the County. The provision for the origination of the zoning plan by an agency which is created in the first instance by a State agency is another illustration of the very evident fact that it was never expected that the Private Act and the resolutions adopted thereunder would ever be applied to the State or its property in the County.

■ The sovereign (State of Tennessee) is not bound by a statute unless it be expressly stated in the statute that the sovereign is to be bound. All the cases, insofar as we can determine, are to this effect. *Keith v. Funding Board,* 127 Tenn. 441, 464, 155 S.W. 142, Ann.Cas. 1914B, 1145; *Mayor & Aldermen of Morristown v. Hamblen County,* 136 Tenn. 242, 246, 188 S.W. 796; *Quinton v. Board of Claims,* 165 Tenn. 201, 54 S.W.2d 953; *Automobile Sales Co. v. Johnson,* 174 Tenn. 38, 122 S.W.2d 453, 120 A.L.R. 370, and *American Can Co. v. McCanless,* 183 Tenn. 491, 501, 193 S.W.2d 86. In the *Keith v. Funding Board, supra* [127 Tenn. 441, 155 S.W. 148], the Court said, among other things:

"We recognize the rule of construction that leaves the sovereign not included in, but, so to speak, with-

drawn from, the general language of a statute or Constitution, unless specifically mentioned.''

■ This rule is recognized as far back in this State, as *State v. Crutcher's Adm'r,* 32 Tenn. 504, at page 509, where the Court there quoted from Mr. Justice Story to this effect:

''where the government is not expressly, or by necessary implication, included, it ought to be clear, from the nature of the mischief to be redressed, or the language used, that the government itself was in contemplation of the Legislature, before a court of law would be authorized to put such an interpretation upon the statute.''

And then this Court in *Mayor & Aldermen of Morristown v. Hamblen County, supra* [136 Tenn. 242, 188 S.W. 797], quoted from a Pennsylvania case, *Jones v. Tatham,* 20 Pa. 398, in part as follows:

'' 'The general business of the legislative power is to establish laws for individuals, not for the sovereign; and, when the rights of the commonwealth are to be transferred or affected, the intention must be plainly expressed or necessarily implied.' ''

And then again in *Quinton v. Board of Claims, supra* [165 Tenn. 201, 54 S.W.2d 957], this was said:

''General procedural statutes in which the state is not specifically named, and which, if applied, would operate to restrict the state's sovereignty, cannot be invoked against the state. The last clause of article 1, sec. 17 of the Constitution provides that suits may be brought against the state in such manner and in such courts as the Legislature may by law direct. This provision carries the positive implication that suits shall

not be brought otherwise, or at all, unless the authority be affirmatively given by statute. *North Britsh & Mercantile Insurance Co. v. Craig,* 106 Tenn. [621], 629, 62 S.W. 155."

We could go on and on quoting these various statements from different opinions of our Court and from every other court that we have had the opportunity to investigate. Nevertheless the principle that we are talking about is as old as the common law itself which is to the effect that, "the king is not bound by any statute, if he be not expressly named to be so bound." Broom Leg. Max., 51. *"Roy n'est lie per ascun statute, si il ne soit expressment nosme."*

In so far as we can find (or have been cited to) all the cases from other jurisdictions involving a construction by State in its governmental capacity hold to this principal of law, that is, that the State is immune from suit and the property purchased or owned by the State in which they are going to build a public building for governmental purposes is not subject to the zoning ordinance or building code of a city or county. The latest case that has been cited to us or that we have found on the subject is *City of Charleston v. Southeastern Construction Co.,* 1950, 134 W.Va. 666, 64 S.E.2d 676, 681. In this case the Court there cites cases from two other jurisdictions supporting this position. That Court says:

"* * * The State Office Building Commission in its construction and future operation and control of the building. In this position we are governed by the clear weight of authority in this country. In *Kentucky Institution for Education of Blind v. City of Louisville,* 128 Ky. 767, 97 S.W. 402, 8 L.R.A.,N.S., 553, the Kentucky Court held that 'a city ordinance requiring

"all buildings occupied by any person or persons or in which any person or persons shall be employed or assemble, of three or more stories in height (except private residences) shall be provided with one or more improved fire escapes when ordered by the inspector or his deputy,'' * * * does not apply to blind asylum created and belonging to the State located in such city, which is under control of a board of visitors appointed by the Governor with the approval of the Senate.' In *City of Milwaukee v. McGregor,* 140 Wis. 35, 121 N.W. 642, the Court held that in the case of the construction of a building by the state board for state purposes under state authority, the matter is wholly the concern of the state and not subject to general state or municipal regulation."

█ We have read these cases and the reasoning is based upon the universal principle above applied that the State is immune from suit or that the king can do no wrong. Of course the State Legislature may expressly authorize the act to apply to the State. Note on this question will be found in 171 A.L.R. at page 826, and when run down we conclude that, under all authorities, the ultimate and absolute power of the State, as a sovereign, to erect buildings or other improvements which are to be devoted, in their entirety, to governmental purposes, that in the delegation of power to municipalities or to counties to adopt and enforce zoning ordinances and building codes should be interpreted as not intended to be applied to the State unless in such zoning ordinances and codes there is an express provision that these do apply to the State. It seems to us to be unreasonable to assume that the State, through its Legislature, ever intended to grant or delegate to one of its creatures the

power and authority to override its sovereign prerogative and make unavailable for its governmental purposes such parts of its domain as are necessary therefor, subject, of course, to the right of private owners to compensation for any property taken.

It was conceded at the bar that the Courts of the State are without jurisdiction to entertain a suit against the Governor of Tennessee. *Clements v. Roberts,* 144 Tenn. 129, 144, 230 S.W. 30.

It is contended in the brief and in the argument before us that the officers and agents of the State may not and should not disregard local zoning regulations when and if to disregard such regulations the result would be to create a nuisance. The case of *Samuels v. Mayor, etc., of City of Nashville,* 35 Tenn. 298, and that of *O'Brien v. Town of Greenburgh,* 239 App.Div. 555, 268 N.Y.S. 173, affirmed in 266 N.Y. 582, 195 N.E. 210, is cited as authority for this argument and contention. In the New York case the distinction is raised there of whether or not the thing sought to be done is governmental or a proprietary or corporate action on behalf of the Government. The Court in that case held that a municipality could be enjoined from erecting a garbage disposal plant in a restricted district which was zoned against such because the act of the municipality there was done in its corporate capacity as distinguished from a governmental function. There are other cases that may be found making this same distinction. It is not necessary for us here to make such a distinction because the acts being done by the State here are clearly a governmental function as required by the statute and acts in providing facilities for the mentally deficient.

In the Samuels case the debate was between the City and the County in providing horse racks around the County Court House. This Court there held that since these horses around would constitute a nuisance then that the County might be enjoined. Clearly we think there is a clear distinction between that case and the principles involved in the instant case. Whether a hitching rack should be maintained in that portion of the Court House square which had been set aside as a thoroughfare clearly pertained to control and regulation of the public thoroughfares, and not to the administration of the County government. The matter of a hitching rack in that portion of the square (a public thoroughfare) was one which had relation to traffic in a public street, and whether it constituted a nuisance or should be removed from the highway was a question which addressed itself to the sound discretion of the City of Nashville in the exercise of the sovereign powers delegated to it.

■ In the assignments of error and arguments here, it is sought, contrary to the frame of the bill, to invoke the doctrine of *ultra vires* acts on the part of these public officers who were constructing this building at Central State Hospital and to argue that by these acts that these officers are not entitled to the protection of the sovereignty. First, are such acts *ultra vires?* In raising this question in argument here we feel that the Court is justified and can go to the sworn answer which is filed in this cause and is not controverted. This answer shows that the Central State Hospital for the treatment and care of the mentally ill is the only one in Middle Tennessee and that it was established at its present location in 1852; that the airport was established in 1929 and in op-

position to its establishment near the Central State Hospital the State objected to it; and that ever since and before the location of the airport where it is, the State hospital buildings and other structures have been higher than the building now sought to be enjoined, and there are other buildings more directly in line of flight of planes than is the present building. That the present building sought to be enjoined is at the lowest place on this State property. As we see it there are no *ultra vires* acts committed on behalf of these officers and for this reason alone the injunction should be denied.

This suit has been unusually well briefed and presented and we have found a great deal of interest in our reading and studying of the matters involved. For the reasons above stated the decree of the Chancellor must be sustained.