TOWN OF ORONOCO AND OTHERS v. CITY OF ROCHESTER.
CITY OF ROCHESTER v. COUNTY OF OLMSTED
AND OTHERS.

197 N. W. 2d 426.

April 28, 1972—Nos. 43264, 43265.

Peterson & Popovich and James E. Knutson, for appellants.

Rockne & Rockne and Paul Rockne, for appellant town of Oronoco.

A. E. Sheridan, for appellants Clifford E. Stevens and Harold E. Heins.

Gerald H. Swanson, City Attorney, for respondent.

Heard before Murphy, Peterson, Kelly, and Nelson, JJ.

PER CURIAM.

This case involves the efforts of the city of Rochester to replace its existing waste disposal facilities with a sanitary landfill, the site for which became the subject of a search begun in 1968. After consultation with the Minnesota Pollution Control Agency, the city obtained an

option to purchase a 252-acre farm located north of Rochester, in the township of Oronoco, intending to conduct various tests to determine whether the site would be suitable for the landfill project.

Shortly thereafter, the town of Oronoco sought to enjoin the undertaking. A temporary injunction requiring the city of Rochester to notify the court prior to the start of construction was entered. Thereafter, the Rochester Common Council appointed a technical committee to find a site for the landfill, which committee recommended five locations, including the one in Oronoco. Upon receipt of the report of the technical committee, the mayor of Rochester appointed another site selection committee. After investigating, this committee listed eight possible sites in order of preference, ranking the Oronoco site second.[1] In due time, the Oronoco property was purchased by the city of Rochester.

Four months later, in February 1970, the Pollution Control Agency issued a permit for construction and operation of a solid-waste disposal system on the Oronoco property, subject to several conditions including the following:

"No major alterations or additions to the disposal system shall be made without the written consent of the Agency.

"This permit is subject without public hearing to modification or revocation, and may be suspended at any time for failure to comply with the terms stated herein or the provisions of any other applicable regulations or standards of the Agency * * * and is issued with the understanding that it does not estop subsequent establishment of further requirements for treatment or control at any time by insertion of appropriate additional clauses herein at the discretion of the Agency if it is considered necessary in order to prevent or reduce possible pollution of the environment because of changed or unforeseen circumstances.

\* \* \* \* \*

"This permit shall become effective only if the location of the site or facility shall conform to all applicable federal, state and local laws, ordinances and regulations.

\* \* \* \* \*

"The sanitary landfill shall be operated at all times in accordance with any applicable regulations or standards of the Minnesota Pollution Control Agency now or hereafter adopted.

\* \* \* \* \*

---

[1] The location ranked first subsequently proved to be unacceptable due to pollution problems.

"Reports describing the types and quantities of waste disposal at this site shall be submitted to the Agency every month, together with other information on the operation of the disposal system."

On December 16, 1969, the Olmsted County Board adopted by resolution an ordinance effective January 2, 1970. The ordinance provided that upon approval of the County Planning Advisory Commission a special exception permit could be issued to allow certain uses, including sanitary landfills and dumps, in agricultural districts. The ordinance further provided for appeal from orders of the commission to the County Board of Adjustment, and a hearing before the board. Its decision is thereafter reviewable by the district court in the county where the land is situated. Minn. St. 394.27.

In March 1970, the city applied to the Olmsted County Planning Advisory Commission for a "special exception permit" to operate the sanitary landfill, such use being "permitted upon approval of the County Planning Advisory Commission" by the terms of the County Zoning Ordinance. The commission, and on appeal the Board of Adjustment, refused to grant a special exception permit. The city of Rochester appealed to the district court on questions of law and fact pursuant to § 394.27. The town of Oronoco and Clifford E. Stevens and Harold E. Heins, owners of nearby land, were permitted to intervene. Following consolidation of the appeal with the action brought by the town to enjoin the city from operating the landfill, and a hearing on both matters, the district court denied injunctive relief and ordered a permit to be issued allowing the operation of a sanitary landfill on the land involved.

In each case, the town and intervenors appealed from an order denying their motion for a new trial.

We are asked to decide whether the County Zoning Ordinance and, additionally, a similar township zoning ordinance [2] apply to the present factual context, and whether, if they do, the decision of the County Board of Adjustment was properly overturned by the district court. We need only decide the first question, for it should be answered in the negative.

It is clear from the authority of cases and texts that a township zoning ordinance should not be applied to restrict the actions of a city undertaken pursuant to a statutorily granted right of eminent domain (in Minnesota by Minn. St. 465.01). See, City of Scottsdale v. Municipal

[2] The town of Oronoco also has a zoning ordinance, adopted December 5, 1960, pursuant to which the land in question is zoned "agricultural."

Court of City of Tempe, 90 Ariz. 393, 368 P. 2d 637 (1962); Green County v. City of Monroe, 3 Wis. 2d 196, 87 N. W. 2d 827 (1958); In re Petition of City of Detroit, 308 Mich. 480, 14 N. W. 2d 140 (1944); 8 McQuillin, Municipal Corporations (3 ed.) § 25.15, p. 46; 2 Metzenbaum, Law of Zoning (2 ed.) p. 1289. Although here condemnation was not required because the city was able to purchase the Oronoco property, we see no reason to apply a different rule. However, whether the county zoning ordinance applied to the city's actions presents a more difficult question. The general rule, as stated at 101 C. J. S., Zoning, § 135, is that a governmental body is not subject to zoning restrictions where property is to be used for governmental, as opposed to proprietary, purposes.[3] Frequently, in fact, authorities possessing the right to condemn have been held, by virtue of that right, to possess exemption from zoning regulations. State ex rel. Askew v. Kopp, 330 S. W. 2d 882 (Mo. 1960); Decatur Park Dist. v. Becker, 368 Ill. 442, 14 N. E. 2d 490 (1938); State ex rel. St. Louis Union Trust Co. v. Ferriss, 304 S. W. 2d 896 (Mo. 1957); Town of Bloomfield v. New Jersey Highway Authority, 18 N. J. 237, 113 A. 2d 658 (1955). However, the trend is to limit such freedom from regulation,[4] a trend which we believe is well within the dictates of the public interest, principally because the pungent realities of urban sprawl and overpopulation have accentuated the need for land-use planning and control that serves as foundation for the exercise of police power in the area of zoning. Consequently, in order to support the principle of enlightened land-use control, we decline to adopt in Minnesota the general rule of governmental exemption from zoning regulation.

The exigencies of the present matter, however, illustrate the core of wisdom in that general rule and the danger in too readily assuming enlightenment where none in fact may exist in the implementation of a particular local zoning policy. Therefore, we adopt a balancing-of-public-interests test for the resolution of conflicts which arise between the exercise by governmental agencies of their police power and their right of eminent domain. This is preferable to adherence to a less flexible "general rule" based simply on the form of the opposing parties rather than the substance of their conflict.[5]

In the case before us, the city of Rochester continues to utilize a site

---

[3] There is no doubt that the city of Rochester is here acting within its governmental capacity. Dehn v. S. Brand Coal & Oil Co. 241 Minn. 237, 63 N. W. 2d 6 (1954).

[4] See, St. Louis County v. City of Manchester, 360 S. W. 2d 638 (Mo. 1962).

[5] See, Note, 49 Minn. L. Rev. 284, 300.

for waste disposal for which there is insufficient cover material and which constitutes a pollution threat to the nearby Zumbro River. The need for the immediate establishment of a new facility is undenied. In opposition to development of that facility on the particular piece of property here in question, it is argued that various threats to the environment would be presented and that, therefore, a different site should be selected. Although an alleged threat of pollution involves a public-interest consideration of the highest order, in the present matter we are satisfied that the approval of the Pollution Control Agency already granted, coupled with the duty and attendant ample opportunity of that agency to regulate in the future the operation of the landfill, adequately dispel any fear that development of the Oronoco site would not be in the public interest for reasons of environmental hazard.

The balance of public interests, in short, favors exemption of the city of Rochester from the provisions of the Olmsted County Zoning Ordinance in so far as they are applied to establishment of a sanitary landfill on the Oronoco township site. Consideration of further issues is, therefore, unnecessary, and the decision of the district court is affirmed.

Affirmed.