**INDEPENDENT SCHOOL DISTRICT NO. 89 OF OKLAHOMA COUNTY, Oklahoma, et al., Appellants,**

**v.**

**The CITY OF OKLAHOMA CITY, Oklahoma, a municipal corporation, Appellee.**

**OKLAHOMA CITY AREA VOCATIONAL TECHNICAL SCHOOL DISTRICT NO. 22, Appellant,**

**v.**

**The CITY OF OKLAHOMA CITY, Oklahoma, a municipal corporation, Appellee.**

**Nos. 61442, 61437.**

Supreme Court of Oklahoma.

July 22, 1986.

Fenton, Fenton, Smith, Reneau & Moon by Ronald L. Day, Oklahoma City, for appellants.

Jerry L. Steward & Associates by Jerry L. Steward, Oklahoma City, for appellant Oklahoma City Area Vocational-Technical School Dist. Number 22.

Walter M. Powell, Mun. Counselor and Kenneth D. Jordan, Asst. Mun. Counselor, Oklahoma City, for appellee.

HODGES, Justice.

█ This case presents an issue of first impression for our decision: Whether a public school district, lying within the city limits of an incorporated city, is automatically immune from the local zoning ordinance of that municipality insofar as such ordinance purports to control the district's location and use of its school facilities. We answer in the negative. In the absence of a clear expression of legislative intent, we find a school district is not automatically immune from a local zoning ordinance, and whether it is subject to such zoning ordi-

nance of a municipality depends on an inference of legislative intent derived from an overall evaluation of all relevant factors.

On October 21, 1980, the City Council of the City of Oklahoma City adopted Ordinance No. 16,002, which substantially modified Chapter 25 of the Oklahoma City Code, Revised 1970, pursuant to the statutory authority contained in 11 O.S. 1981 § 43–101 through § 47–124. Ordinance No. 16,002 constitutes City's Planning and Zoning Code (Zoning Code) and purports to regulate the location of buildings and structures of any public or governmental body or agency,[1] which City maintains as including public school districts. The Zoning Code classifies the different types of schools involved and then delegates which schools are permitted in which zoning districts. For example, kindergartens and elementary schools are classified as Low Impact Institutional Neighborhood Related[2] and, as such, must be located in designated zones or meet specific conditions required for a Conditional Use Permit. High schools, middle schools and vocational-technical schools are classified as Moderate Impact Institutional[3] and are limited to the Central Business District unless they meet the necessary requirements to obtain a Special Exception Use Permit from City's Board of Adjustment.

Following the adoption of the Zoning Code, Independent School District Nos. 3, 6, 12, 37, 53 and 89 of Oklahoma County; Oklahoma City Area Vocational-Technical School District No. 22; Eastern Oklahoma County Vocational Technical School District No. 23; and Oklahoma School Boards Association, Inc. (collectively School Districts or appellants) located partially or totally within the boundaries of Oklahoma City brought this action in the District

---

1. Oklahoma City Planning and Zoning Code, Ordinance No. 16,002, § 1300.7 provides:
   "All property owned, leased, or operated by the City of Oklahoma City, or any other public or governmental body or agency, shall be subject to the terms of this ordinance."

2. Oklahoma City Planning and Zoning Code, Ordinance No. 16,002, § 2304.1.

3. Oklahoma City Planning and Zoning Code, Ordinance No. 16,002, § 2304.2.

Court of Oklahoma County seeking a declaratory judgment, pursuant to 12 O.S. 1981 § 1651, that the City of Oklahoma City (City or appellee) was without authority to regulate the location and use of public schools through its Zoning Code and that School Districts, are entitled to exercise their powers and duties to provide public education to the citizens they serve without interference by City through the enforcement of its Zoning Code.

City responded and requested the trial court to uphold the Zoning Code as a lawful exercise of its police power and urged that the issue of the immunity of school districts from local zoning regulations should be decided on a case-by-case basis under the balancing of interests test adopted by other jurisdictions. Both appellants and appellee filed respective motions for summary judgment, agreeing that the litigation presents disputed legal issues without involving a substantial controversy as to any material fact. The trial court sustained the motion for summary judgment on behalf of City, holding Ordinance No. 16,002 was a lawful and authorized exercise of City's police power and; "therefore, pursuant to various sections of the Zoning Code schools are allowed to be located only in certain specified districts, upon meeting specific conditions or upon the grant of a special exceptions by the Oklahoma City Board of Adjustment." From that decision School Districts appeal.

Appellants assert the trial court erred in finding School Districts are subject to the local zoning regulations of City. In support of this argument appellants maintain (1) School Districts, subdivisions of the State, are not subject to local zoning regulations; (2) the location of school facilities is a governmental function, and is not a matter of local zoning; (3) School Districts have the power of eminent domain and are therefore immune from local zoning regulations; (4) School Districts, as a subdivision and arm of the State, are the superior sovereign to municipalities and thus not subject to their local zoning regulations; (5) School Districts are not subject to local zoning regulations under the balancing test; and (6) there is an absence of statutory authority allowing municipalities to subject School Districts to their local zoning regulations.

In determining the question whether a political subdivision is immune from municipal zoning regulations, the courts have relied on various tests to resolve the issue absent a specific statutory exemption. These include the governmental proprietary, superior sovereign, eminent domain and balancing of interests tests.[4]

It has been judicially determined that a school district is a subordinate agency of the state.[5] Although this Court has not addressed the precise issue raised in this case, we have addressed an analogous issue in the context of a conflict between the Department of Corrections and a municipality. In *In Matter of Suntide Inn Motel*, 563 P.2d 125 (Okla.1977), the general issue of whether a state governmental agency is subject to municipal zoning regulations was considered. There, the Oklahoma Department of Corrections, purchased the Suntide Inn Motel property to use for a community treatment center. The City of Oklahoma City informed the State and its agencies that they must submit the proposed site to the Oklahoma City Planning Commission for approval pursuant to 11 O.S. 1971 § 1420 (current version at 11 O.S. 1981 § 47–109) or the City would institute proceedings to enjoin such use. Because of the public importance and the necessity of an early decision, this Court assumed original jurisdiction and held

---

**4.** For a comprehensive discussion see Haught, *Zoning: Immunity of State Activities from Municipal Zoning Regulation in Oklahoma*, 49 OBJ 1491 (1978); Sales, *The Applicability of Zoning Ordinances to Governmental Land Use*, 39 Tex. L.Rev. 316 (1961); Note, *Governmental Immunity from Local Zoning Ordinances*, 84 Harv.L. Rev. 869 (1971); Comment, *The Inapplicability* of *Municipal Zoning Ordinances to Governmental Land Uses*, 19 Syracuse L.Rev. 698 (1968).

**5.** *Independent Consol. School Dist. No. 7 v. Bowen*, 199 Okl. 92, 183 P.2d 251 (1947); *Dowell v. Board of Education*, 185 Okl. 342, 91 P.2d 771, 775 (1939).

"that 11 O.S. 1971, § 1420, does not require the State of Oklahoma to submit its selection of a site for a community treatment center for approval of the Oklahoma City Planning Commission."

While the majority of the Court holds the Department of Corrections is immune from the zoning regulations, it does so under two completely different rationales. The majority opinion is based on the general rule that "a State governmental body is not subject to local zoning regulations or restrictions." [6] It then adopts the holding of *Davidson County v. Harmon*, 200 Tenn. 575, 292 S.W.2d 777 (1956), that the State and its agencies are immune from local zoning regulations solely upon its superior position in the governmental hierarchy unless there is express statutory language. This approach is often referred to as the superior sovereign test.[7]

The specially concurring opinion rejects the majority's apparent adoption of absolute sovereign immunity, and states "[t]o hold a State is never subject to local zoning restrictions is to emasculate in perpetuum, the very power the State has granted to municipalities, to zone and regulate its orderly growth." [8] It further states the dissent reflects the more enlightened view concerning the concept of sovereign immunity, and espouses the balancing of interests test as the more valid test to be used for resolving intergovernmental conflict over land use.

As noted in the dissenting opinion in *Suntide*, the traditional concept of immunity adopted by the majority is being rejected by appellate courts of other jurisdictions as being "too simplistic" and such courts are placing the balancing of interests test in its stead.[9] Sovereign immunity has consistently had the result of upholding a state and its agencies when in conflict with municipal zoning regulations.[10] However, as advocated in the dissent, the balancing of interests test provides the more reasonable approach which affords fairness and flexibility on a case-by-case basis.

*Rutgers, supra*, is the leading case rejecting a mechanical finding of immunity and adopting the balancing methodology as a means to determine the existence and scope of immunity in intergovernmental conflicts concerning zoning. The *Rutgers* court states:

"The question of what governmental units or instrumentalities are immune from municipal land use regulations, and to what extent, is not one properly susceptible of absolute or ritualistic answer. Courts have, however, frequently resolved such conflicts in perhaps too simplistic terms and by the use of labels rather than through reasoned adjudication of the critical question of which governmental interest should prevail in the particular relationship or factual situation." [11]

■ To establish the existence and scope of immunity *Rutgers* suggests the following criteria to be considered for the balancing of interests of the governmental

---

6. 563 P.2d at 127 (citing *Rutgers, State University v. Piluso*, 60 N.J. 142, 286 A.2d 697 (1972); *Nowack v. Department of Audit and Control*, 72 Misc.2d 518, 338 N.Y.S.2d 52 (1973)). However, as the dissenting opinion in *Suntide* observes, *Rutgers* does not support the majority's adoption of the state immunity concept.

7. *See* S. Haught, *Zoning: Immunity of State Activities From Municipal Zoning Regulation in Oklahoma*, 49 OBJ 1491 (1978) for a discussion of *Suntide*.

8. 563 P.2d at 129 (Doolin, J., concurring).

9. *City of Temple Terrace v. Hillsborough Ass'n*, 322 So.2d 571 (Fla. 2d Dist.Ct.App.1975), *aff'd*, *Hillsborough Ass'n v. City of Temple Terrace*, 332 So.2d 610 (Fla.1976); *Village of North Palm Beach v. School Board*, 349 So.2d 683 (Fla.Dist. Ct.App.1977); *Town of Oronoco v. City of Rochester*, 293 Minn. 468, 197 N.W.2d 426 (1972); *City of Fargo v. Harwood Township*, 256 N.W.2d 694 (N.D.1977); *Rutgers, State University v. Piluso*, 60 N.J. 142, 286 A.2d 697 (1972); *Township of Pemberton v. State*, 178 N.J.Super. 346, 429 A.2d 360 (1981); *Blackstone Park Improvement Association v. State*, 448 A.2d 1233 (R.I.1982).

10. *Blackstone Park Improvement Association*, 448 A.2d at 1237.

11. *Rutgers, State University*, 286 A.2d at 701.

body seeking immunity against the welfare of the municipality:

"The rationale which runs through our cases and which we are convinced should furnish the true test of immunity in the first instance, albeit a somewhat nebulous one, is the legislative intent in this regard with respect to the particular agency or function involved. That intent, rarely specifically expressed, is to be divined from a consideration of many factors, with a value judgment reached on an overall evaluation. All possible factors cannot be abstractly catalogued. The most obvious and common ones include [1] the nature and scope of the instrumentality seeking immunity, [2] the kind of function or land use involved, [3] the extent of the public interest to be served thereby, [4] the effect local land use regulation would have upon the enterprise concerned and [5] the impact upon legitimate local interests.... In some instances one factor will be more influential than another or may be so significant as to completely overshadow all others. No one, such as the granting or withholding of the power of eminent domain, is to be thought of as ritualistically required or controlling. And there will undoubtedly be cases, as there have been in the past, where the broader public interest is so important that immunity must be granted even though the local interests may be great. The point is that there is no precise formula or set of criteria which will determine every case mechanically and automatically." [12]

After balancing the respective interests involved, the *Rutgers* court held the University's proposed use of land for student housing was reasonable. It held that the legislative history and enactments revealed an express intent to provide the University with immunity from local land use regula-

tions. The court held that such immunity must be curbed by reason.

"It is, however, most important to stress that such immunity in any situation is not completely unbridled. Even where it is found to exist, it must not, ... be exercised in an unreasonable fashion so as to arbitrarily override all important legitimate local interests. This rule must apply to the state and its instrumentalities as well as to lesser governmental entities entitled to immunity. For example, it would be arbitrary, if the state proposed to erect an office building in the crowded business district of a city where provision for off-street parking was required, for the state not to make some reasonable provision in that respect. And, at the very least, even if the proposed action of the immune governmental instrumentality does not reach the unreasonable stage for any sufficient reason, the instrumentality ought to consult with the local authorities and sympathetically listen and give every consideration to local objections, problems and suggestions in order to minimize the conflict as much as possible." [13]

Both parties would have this Court clarify our decision in *Suntide*. They urge definitive adoption of the balancing of interests approach as set forth in *Rutgers* to determine the legislative intent of whether a particular governmental subdivision should be afforded immunity to a given type of municipal regulation. A review of the law leads us to the conclusion that the parties' point is well taken. [14] We hereby adopt the *Rutgers* balancing of interests approach and that portion of *Suntide* which holds to the contrary is expressly overruled.

Apparently, the trial court rejected an automatic determination of state immunity in finding in favor of City. And, evidently, it found the Legislature did not intend for

12. *Id.,* 286 A.2d at 702–03.

13. *Id.* at 703.

14. *See e.g., City of Orlando v. School Bd. of Orange Co.,* 362 So.2d 694 (Fla. 4th Dist.Ct.App. 1978); *Village of North Palm Beach v. School Bd. of Palm Beach County,* 349 So.2d 683 (Fla. 4th Dist.Ct.App.1977) (both cases have adopted the balancing of interests approach in conflicts between school districts and municipalities).

School Districts to be immune from City's zoning ordinance. However, it is unclear whether such conclusion is based upon a finding of legislative intent which is specifically expressed or upon a finding of an implied intent under the balancing of interests test.

School Districts do not claim absolute immunity to City's Zoning Code. Rather, they argue the "true test of immunity" under *Rutgers* is the legislative intent and that it is clear from a review of the statutes concerning the common schools the Oklahoma Legislature specifically expressed an intent that a school district is not subject to a municipality's regulation of site location for a public school building. They assert that only if legislative intent is not "specifically expressed", an overall evaluation is given to the various factors. They further maintain that in addition to an express legislative intent, upon an overall analysis of the five factors suggested in *Rutgers*, the same legislative intent can be gleaned in the present case. They therefore contend the trial court erred in its finding that School Districts are subject and must comply with the terms of City's Zoning Code.

School Districts rely on various statutory provisions [15] in support of their argument that the Oklahoma Legislature expressly intended to render a school district immune from municipal zoning regulations. Upon review of such provisions, we cannot find they constitute a specific expression of legislative intent to grant a school district automatic immunity from municipal zoning

regulations; nor is there anything indicating a school district is subject to municipal zoning.

■ In view of the fact a specific legislative intent is lacking, the relevant competing interests of the parties as suggested by the *Rutgers* case must be weighed. The procedural circumstances of this case call for a determination by the trial court. As previously indicated it is unclear whether the trial court considered the factors suggested as relevant by the *Rutgers* court. Inasmuch as we have found an absence of an express legislative declaration, a determination of legislative intent should be gleaned from an examination of all the relevant factors. The initial decision based on the application of the balancing of interests test should be made by the trial court after weighing the evidence presented at trial. Because reasonable people could draw differing conclusions based upon the undisputed facts before the trial court on motions for summary judgment, the trial court erred in granting summary judgment. *Flanders v. Crane Co.*, 693 P.2d 602, 605 (Okla.1984).

Accordingly, the trial court on remand should consider all pertinent factors to divine the legislative intent as to whether or not School Districts are immune from City's Zoning Code concerning site location.[16]

Consequently, for the foregoing reasons, we reverse the trial court's granting of summary judgment in favor of City and remand the case with directions to conduct

---

15. Among the powers granted to the board of education of each school district in 70 O.S.Supp. 1983 § 5–117 include the powers to "acquire sites", to "acquire property by condemnation", to "designate schools to be attended" and to "exercise sole control over all the schools and property of the district."

School Districts also point out that 11 O.S. 1981 § 47–111 grants municipalities the power to "recommend", not restrict, the location of public school building. And, that under 11 O.S. 1981 § 47–106, a school board may overrule a city's planning commission's disapproval because the "authorization or financing" of a public school building does not fall within the province of a city's council.

In contrast, City points to 11 O.S.Supp. 1984 § 45–104(A) which applies only to cities under a population of 200,000 and which provides in pertinent part: "Before final action may be taken by any municipality or department thereof on the *location, construction, or design of any public building* ... the question shall be submitted to the planning commission for investigation and report. Counties and *school districts* may be exempted from the payment of a fee to obtain any license or permit required by a zoning, building, or similar ordinance of a municipality." (Emphasis added).

16. *Rutgers*, 286 A.2d at 705.

further proceedings directed toward the decision of the case through the application of the balancing of interests test.

REVERSED AND REMANDED.

LAVENDER, HARGRAVE, OPALA, WILSON, KAUGER and SUMMERS, JJ., concur.

SIMMS, C.J., concurs in result.