Dear Representative Sadler,
¶ 0 This office has received your request for an Attorney General Opinion in which you have asked the following question:
Can the City of Ardmore enforce its zoning ordinance, buildingcode and flood plain regulations in Lake Murray State Park, onState-owned land, which is leased to a private concessionaire,and is within the city limits of Ardmore?
¶ 1 Lake Murray State Park is controlled by the Oklahoma Tourism and Recreation Commission (hereinafter "Tourism"). 74O.S. 1991, § 1805[74-1805]. Within the boundaries of the park is a privately-owned entity doing business as a convenience store and a boat storage facility. The land is within the city limits of Ardmore (hereinafter "City"); but is State-owned, and the concessionaire has a lease for the property from the State. The business owner sought and received from the State the necessary permits to remodel and expand the business premises. He did not seek the necessary permits from the City, which claims that City-issued permits are necessary. No one disputes the fact the business is located within the city limits.
¶ 2 The situation here involves a lease agreement between the business and Tourism. Absent an agreement to the contrary within that lease, a lessee has all the rights and privileges to the leased property that the lessor had at the time the lease was executed. 51C C.J.S. Landlord Tenant § 288 (1968). No facts were provided which indicate anything different from that standard principle. It is therefore assumed the lessee here has all the rights and privileges to the leased property that Tourism had when the agreement was executed.
¶ 3 Prior to 1986, the answer to your inquiry would have been simple, for as stated in Attorney General Opinion 83-292, the general rule concerning the subjugation of State property to regulation by municipalities was, at that time, solely based on the doctrine of superior sovereignty:
 Property of the state is exempt from municipal regulation in the absence of waiver on the part of the state of its right to regulate its own property; and such waiver will not be presumed. The municipality cannot regulate or control any property which the state has authorized another body or power to control.
Id. at 537 (quoting 62 C.J.S. Municipal Corporations § 157 (1949)).
¶ 4 To the same effect see A.G. Opin. 73-327. These opinions reflected the prevailing philosophy at the time they were written. See Matter of Suntide Inn Motel, 563 P.2d 125 (Okla. 1977), cited in A.G. Opin. 83-292.
¶ 5 However, in Independent School District 89 v. OklahomaCity, 722 P.2d 1212 (Okla. 1986), the Supreme Court reconsidered its earlier holding and rejected as "too simplistic" the traditional concept of superior sovereignty Id. at 1215. Instead, the Court adopted as more reasonable a "balancing of interests test" which, the Court explained "affords fairness and flexibility on a case-by-case basis." Id. at 1215-16. In so holding, the Court identified certain factors to determine legislative intent on the extent of State immunity from municipal regulation, with respect to any particular agency or any particular function.
 The rationale which runs through our cases and which we are convinced should furnish the true test of immunity in the first instance, albeit a somewhat nebulous one, is the legislative intent in this regard with respect to the particular agency or function involved. That intent, rarely specifically expressed, is to be divined from a consideration of many factors, with a value judgment reached on an overall evaluation. All possible factors cannot be abstractly catalogued. The most obvious and common ones include [1] the nature and scope of the instrumentality seeking immunity, [2] the kind of function or land use involved, [3] the extent of the public interest to be served thereby, [4] the effect local land use regulation would have upon the enterprise concerned and [5] the impact upon legitimate local interests.
Id. at 1216 (quoting Rutgers, State University v. Piluso,60 N.J. 142, 286 A.2d 697, 702-03 (1972)) (alternation in original) (emphasis added).
¶ 6 The Court noted no precise formula or set of criteria exists which could automatically and mechanically determine every case. Id.
¶ 7 In the case you present, there is no express legislative intent concerning the immunity of state-owned land within its park system. Thus, the answer to your inquiry must turn on the application of the Independent School District case to the specific facts in your case. Because the answer to your question turns on specific facts, it is beyond the scope of an Attorney General's Opinion.
¶ 8 Your question also asks about building code and flood plain regulations, and whether the City can enforce these regulations on the lessee. As noted above, the issue in the IndependentSchool District case dealt with zoning regulations. The question thus becomes whether the Supreme Court would extend that same rationale to questions involving building code and flood plain regulations. The Court's opinion strongly suggests a like analysis would be used in such instances.
¶ 9 Again quoting the Rutgers case, the Court observed that "[t]he question of what governmental units or instrumentalities are immune from municipal land use regulations, and to what extent, is not one properly susceptible of absolute or ritualistic answer." Independent School District,722 P.2d at 1215 (emphasis added). See also id. at 1215-16 ("To establish the existence and scope of immunity Rutgers suggests the following criteria to be considered for the balancing of interests of the governmental body seeking immunity against thewelfare of the municipality[.]") (emphasis added); id.
(observing the Rutgers case held a legislative intent "to provide the University with immunity from local land useregulations"); id. (noting both sides in the case urged clarification "whether a particular governmental subdivision should be afforded immunity to a given type of municipalregulation") (emphasis added). The use of these phrases instead of the simple word "zoning" implies the Court may well be inclined to extend its holding not simply to the way a particular parcel of land is zoned, but also to both building codes and flood plain regulations — the forms of governmental regulation of land use about which you ask. As the Court said in IndependentSchool District:
 It is, however, most important to stress that such immunity in any situation is not completely unbridled. Even where it is found to exist, it must not, . . . be exercised in an unreasonable fashion so as to arbitrarily override all important legitimate local interests. This rule must apply to the state and its instrumentalities as well as to lesser governmental entities entitled to immunity. . . . And, at the very least, even if the proposed action of the immune governmental instrumentality does not reach the unreasonable stage for any sufficient reason, the instrumentality ought to consult with the local authorities and sympathetically listen and give every consideration to local objections, problems and suggestions in order to minimize the conflict as much as possible.
Id. at 1216 (quoting Rutgers, 286 A.2d at 703) (first alteration in original) (emphasis added).
¶ 10 Because the law has changed since the issuance of Attorney General Opinions 83-292 and 73-327, both of these Opinions are hereby withdrawn.
¶ 11 It is, therefore, the official Opinion of the AttorneyGeneral that:
1. Whether the City of Ardmore can enforce its zoning ordinance,building code and flood plain regulations in Lake Murray StatePark on State-owned land within the city limits of Ardmore isdetermined under present case law by the application of a testwhich balances the interests of the city and the State. Todetermine whether State or municipal regulations in these areasprevail, the courts will consider various factors, including butnot limited to: (1) the nature and scope of the instrumentalityseeking immunity, (2) the kind of function or land use involved,(3) the extent of the public interest to be served thereby, (4)the effect local land use regulation would have upon theenterprise concerned and (5) the impact upon legitimate localinterests.
2. The determination as to which regulations prevail must bemade on a case-by-case basis. Because the law has changed sincethe issuance of Attorney General Opinions 83-292 and 73-327, bothOpinions are hereby withdrawn.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
DAN CONNALLY ASSISTANT ATTORNEY GENERAL