| | | |
|---|---|---|
| HARPETH VALLEY UTILITIES DISTRICT OF DAVIDSON AND WILLIAMSON COUNTIES, | ) ) ) | |
| | ) | Davidson Chancery |
| Plaintiff/Appellant, | ) | No. 97-2895-III |
| | ) | |
| VS. | ) | |
| | ) | |
| THE METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY, | ) ) ) | Appeal No. 01A01-9711-CH-00686 |
| | ) | |
| Defendant/Appellee. | ) | |
| | ) | |
| RAY BELL, GLENDA BELL, WILLIAM COBLE, DR. ROY PARKER, JIMMY JONES, WESLEY BARNES, FANNIE C. BUCHANAN, KEITH VAUGHN, JOEL CHEEK, DANNY GRAVES, EDDIE GRAVES, JERRY GRAVES, ANNIE K. GRAVES, MACK AND WANDA LOVELL, JOE COLLIER, JIM FESMIRA, MAC KELL, THOMAS ROGERS, GENE ROGERS, AND GEORGE ROGERS, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Intervenors-Defendants/Appellees | ) | |

FILED

June 12, 1998

Cecil W. Crowson
Appellate Court Clerk

## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

### APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
### AT NASHVILLE, TENNESSEE

### HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

Val Stanford, #3316
GULLETT, SANFORD, ROBINSON & MARTIN, PLLC
230 Fourth Avenue North, 3rd Floor
P.O. Box 198888
Nashville, Tennessee 37219-8888

Robert E. Parker, #2756
George A. Dean, #6737
PARKER, LAWRENCE, CANTRELL & DEAN
Fifth Floor, 200 Fourth Avenue, North
Nashville, Tennessee 37219
ATTORNEYS FOR PLAINTIFF/APPELLANT

George E. Barrett, #2672
Phillip A. Purcell, #14453
J. Bryan Lewis, #15116
BARRETT, JOHNSTON & PARSLEY
217 Second Avenue North
Nashville, Tennessee 37201
Stephen O. Nunn, #9069
ATTORNEYS FOR INTERVENOR-DEFENDANTS/APPELLEES

Wesley G. Weeks, #18267
204 Metro Courthouse
Nashville, Tennessee 37201
ATTORNEYS FOR DEFENDANT/APPELLEE

-2-

**REVERSED AND REMANDED**


                                   HENRY F. TODD
                                   PRESIDING JUDGE, MIDDLE SECTION


CONCURS IN SEPARATE OPINION:
WILLIAM C. KOCH, JR., JUDGE
JERRY SMITH, SPECIAL JUDGE

HARPETH VALLEY UTILITIES )
DISTRICT OF DAVIDSON AND )
WILLIAMSON COUNTIES, )
                             ) **Davidson Chancery**
     **Plaintiff/Appellant,** ) **No. 97-2895-III**
                             )
**VS.** )
                             )
**THE METROPOLITAN GOVERNMENT**) **Appeal No.**
**OF NASHVILLE & DAVIDSON** ) **01A01-9711-CH-00686**
**COUNTY,** )
                             )
     **Defendant/Appellee.** )
                             )
**RAY BELL, GLENDA BELL, WILLIAM** )
**COBLE, DR. ROY PARKER, JIMMY** )
**JONES, WESLEY BARNES, FANNIE C.** )
**BUCHANAN, KEITH VAUGHN, JOEL** )
**CHEEK, DANNY GRAVES, EDDIE** )
**GRAVES, JERRY GRAVES, ANNIE K.** )
**GRAVES, MACK AND WANDA** )
**LOVELL, JOE COLLIER, JIM** )
**FESMIRA, MAC KELL, THOMAS** )
**ROGERS, GENE ROGERS, AND** )
**GEORGE ROGERS,** )
                             )
     **Intervenors-Defendants/Appellees** )

# O P I N I O N

The origin of the present controversy is the plan of the Harpeth Valley Utility District to construct and operate a wastewater disposal facility in an area of Davidson County known as "Bell's Bend." The basic question on appeal is whether the planning and zoning authorities of Metropolitan Government of Nashville and Davidson County have jurisdiction to regulate the proposed facility. The Trial Court rendered summary judgment that the local authorities had such jurisdiction. The utility appealed to this Court.

Twenty-one residents of Bell's Bend were permitted to intervene in the Trial Court proceedings, and they have participated in this appeal.

The utility presents the following issues:

       1.     Whether under the decisions of the Tennessee Courts
      and the statutes empowering METRO to adopt zoning

regulations, such zoning regulations are applicable to HVUD, as an agency or instrumentality of the State of Tennessee, in carrying out its basic statutory powers to locate, construct and operate a wastewater treatment facility; and

2.      Whether under a proper construction of the Utility District Law of 1937, T.C.A. §§ 7-82-101 *et seq.*, METRO is preempted and precluded from applying its zoning regulations to the location, construction and operation of a wastewater treatment facility by HVUD.

The Metropolitan Government presents the following issues:

Whether, as a matter of law, the Chancery Court was correct in holding the HVUD must comply with the local zoning ordinance of the Metropolitan Government of Nashville and Davidson County in its effort to build a wastewater treatment facility in Davidson County.

Whether the application of generally accepted rules of statutory construction demonstrates that the Chancery Court properly held that HVUD is subject to the Metropolitan Government's zoning ordinance.

Whether this Court should adopt the "Balancing of Interests" test to decide issues of intergovernment sovereign immunity in Tennessee, if this Court determines that the Chancery Court erred in its ruling.

Whether HVUD's new preemption argument is properly before this Court, and if so, whether the relevant statutes are sufficient to preempt the zoning laws of Metropolitan Government of Nashville and Davidson County.

Whether, HVUD has waived its immunity, if any, to the Metropolitan Government's zoning regulations.

The Intervenors present the issues in the following form:

The Bell Intervenor Defendants, appellees herein, adopt the first issue presented for review by the Harpeth Valley Utilities District of Davidson and Williamson Counties ("HVUD").

HVUD's states its second issue presented for review as

> "[w]hether under a proper construction of the Utility District Law of 1937, T.C.A. §§ 7-82-101 *et seq.*, METRO is preempted and precluded from applying its zoning regulations to the location, construction and operation of a wastewater treatment facility by HVUD."

The Bell Intervenor Defendants submit that HVUD has waived that argument not having presented it to the Trial

-4-

Court and therefore objects to this Court considering that issue on appeal.

Title 7, Chapter 81 of Tennessee Code Annotated is entitled "Sanitary Districts." It was originally enacted as Chapter 64 of the Public Acts of 1901.

Section 13 of the act, T.C.A. § 7-81-109 provides:

> **Incorporation - Designation as sanitary districts**. - (a) Upon the registration of the certificate, the petitioners and their successors and all other voters of the town shall be incorporated and be vested with the right conferred by this chapter, and none other, it being the intention not the right conferred by this chapter, and none other, it being the intention not to confer upon the corporation the powers of incorporated towns in this state.

Section 27 of the same act, T.C.A. § 7-81-110 provides:

> **General municipal laws preserved**. - Nothing in this chapter shall be construed to alter, repeal, or amend the general laws for organizing municipal corporations or taxing districts in this state. [Acts 1901, ch. 64, § 27; Shan., § 2023a52; Code 1932, § 3683; T.C.A. (orig. ed.), § 6-2533.]

Section 25 of the same act, T.C.A. § 7-81-309 provides:

> **Sanitary inspector**. - It is the duty of the sanitary inspector to thoroughly and carefully inspect the premises of each resident of the town, and to remove and abate all nuisances at such times as the assembly may prescribe, and to perform such other duties as the assembly may impose. The sanitary inspector shall, during such inspector's term of office, be vested with the powers and duties of a constable within the corporate limits of the town, but shall not serve civil process. The sanitary inspector's compensation and the manner of paying the same shall be fixed by the assembly. The sanitary inspector shall not be required to reside within the corporate limits of the town. [Acts 1901, ch. 64, § 25; Shan., § 2023a50; Code 1932, § 3681, T.C.A. (orig. ed.), § 6-2530.]

Title 7, Chapter 82 of Tennessee Code Annotated is entitled "Utility Districts." It was originally enacted as Chapter 248 of the Public Acts of 1937. Section 9 of the act, T.C.A. § 7-82-103, contained the following provisions:

(a) the provisions of §§ 7-82-102 and 7-82-402(b) shall not apply to those water utility districts having less than one thousand (1,000) subscribers to its service.

Section 17 of the same act, T.C.A. § 7-82-107 provides:

**Chapter unaffected by other law - Construction**. - This chapter is complete in itself and shall be controlling. The provisions of any other law, general, special or local, except as provided in this chapter, shall not apply to a district incorporated hereunder; provided, that nothing in this chapter shall be construed as impairing the powers and duties of the department of environment and conservation. [Acts 1937, ch. 248, § 17; C. Supp. 1950, § 3695.43 (Williams, § 3695.42); T.C.A. (orig. ed.), § 6-2627.]

Section 16 of the same act, T.C.A. § 7-82-104, contained the following provision:

**Exemption from state regulation - Rules of construction**. (a) Neither the public service commission nor any other board or commission of like character hereafter created shall have jurisdiction over the district in the management and control of any system, including the regulation of its rates, fees, tolls or charges, except to the extent provided by this chapter and by the Wastewater Facilities Act of 1987, compiled in title 68, chapter 221, part 10.

Section 3 of the same act, T.C.A. § 7-82-301 provides:

**District as municipality - Powers - Failure to act - Name change**. (a)(1) From and after the date of the making and filing of such order of incorporation, the district so incorporated shall be a "municipality" or public corporation in perpetuity under its corporate name, and the same shall in that name be a body politic and corporate with power of perpetual succession, but without any power to levy or collect taxes. Charges for services authorized herein shall not be construed as taxes.

Section 5 of the same act, T.C.A. § 7-82-302 provides:

**Power to operate utilities**. (a)(1) Any district heretofore or hereafter created under authority of this chapter is empowered to conduct, operate and maintain a system or systems for the furnishing of water, sewer, sewage disposal.

Section 18 of the same act, T.C.A. § 7-82-305 provides:

**Eminent domain.** Any district has the power to condemn either the fee or such right, title interest, or

easement in the property as the board may deem necessary for any of the purposes mentioned in this chapter, and such property or interest in such property may be so acquired whether or not the same is owned or held for public use by corporations, associations or persons having the power of eminent domain, or otherwise held or used for public purposes; provided, that such prior public use will not be interfered with by this use.

Title 68, Chapter 221 of Tennessee Code Annotated is entitled "Water and Sewerage."

It was enacted by Chapter 52 of the Public Acts of 1945.

Section 1 of said act, T.C.A. § 68-221-101(a)(11) provides:

(11) "Sewage" means all water-carried human and household wastes from residences, buildings, institutions or industrial establishments, together with such ground, surface, or storm water as may be present.

Section 2, T.C.A. § 68-221-102, provides:

**Supervision over construction of water supply and sewerage systems - Certification of local standards**. (a)(1) The department shall exercise general supervision over the construction of public water supplies and public sewerage systems throughout the state.

(2) Such general supervision shall include all of the features of construction of waterworks systems which do or may affect the sanitary quality of the water supply and all features of construction of sewerage systems which do or may affect the proper collection, treatment or disposal of sewage.

(3) No new construction shall be done, nor shall any change be made in any public water supply or public sewerage system, until the plans for such new construction or change have been submitted to and approved by the department.

Title 68, Chapter 221, Section 6 of Tennessee Code Annotated, enacted by Chapter 605,

Public Acts of 1974, is entitled "Water and Wastewater Authorities."

Section 2 of said act, T.C.A. § 68-221-602, provides:

(a)  It is hereby declared that water and wastewater treatment authorities created pursuant to this part shall be

public and governmental bodies acting as agencies and instrumentalities of the creating and participating governmental entities; and that the acquisition, operation and finance of water and wastewater treatment works by such authorities is hereby declared to be for a public and governmental purpose and a matter of public necessity.

(b) The property of revenues of the authority, or any interest therein, are exempt from all state, county and municipal taxation. [Acts 1974, ch. 605, § 2, T.C.A. §§ 53-6002, 68-13-602.]

Section 7 of the same act, T.C.A. § 68-221-607 provides:

An authority has all powers necessary to accomplish the purposes of this part (excluding the power to levy and collect taxes) including, but not limited to, the following:

(1) Have perpetual succession, sue and be sued, and adopt a corporate seal;

(2) Plan, establish, acquire, construct, improve and operate one (1) or more treatment works within or without the creating and participating governmental entities and within this state and within any adjoining state.

Section 10 of the same act, T.C.A. § 68-221-610 provides:

**Power to condemn property**. (a) An authority has the power to condemn either the fee or such right, title, interest or easement in the property as the board may deem necessary for any of the purposes mentioned in this part, and such property or interest in such property may be so acquired whether or not the same is owned or held for public use by corporations, associations or persons having the power of eminent domain, or otherwise held or used for public purposes; provided, that such prior public use will not be interfered with by this use.

### MUNICIPAL ZONING

Title 13, Chapter 4 of Tennessee Code Annotated is entitled "Municipal Planning." It was enacted by Chapter 34 of the Public Acts of 1935.

Section 13-4-101 provides in part:

(a) The chief legislative body of any municipality (whether designated board of aldermen, board of

commissioners or by other title) may create and establish a municipal planning commission.

Section 13-4-104 provides in part:

> **Submission of proposed construction to commission - approval - Failure to approve, overruling**. - Whenever the commission shall have adopted the plan of the municipality or any part thereof, then and thenceforth no street, park or other public way, ground, place or space, no public building or structure, or no public utility, whether publicly or privately owned, shall be constructed or authorized in the municipality until and unless the location and extent thereof shall have been submitted to and approved by the planning commission; provided, that in case of disapproval, the commission shall communicate its reasons to the chief legislative body of the municipality, and such legislative body, by a vote of a majority of its membership, shall have the power to overrule such disapproval and, upon such overruling, such legislative body shall have the power to proceed.

Section 13-4-201 provides in part:

> **General plan for physical development**. - It is the function and duty of the commission to make and adopt an official general plan for the physical development of the municipality, including any area outside of its boundaries which, in the commission's judgment, bears relation to the planning of the municipality.

## MUNICIPAL ZONING

Title 13, Chapter 7 of Tennessee Code Annotated is entitled "zoning." Part 2 of said title is entitled "Municipal Zoning." It was enacted by chapter 44 of the Public Acts of 1935.

Section 13-7-201 provides in part:

> **Grant of power**. - (a)(1) For the purpose of promoting the public health, safety, morals, convenience, order, prosperity and general welfare, the board of aldermen, board of commissioners or other chief legislative body of any municipality by whatever title designated (and hereinafter designated as "chief legislative body"), is empowered, in accordance with the conditions and the procedure specified in this part and part 3 of this chapter, to regulate the location, height, bulk, number of stories and size of buildings and other structures, the percentage of the lot which may be occupied,

the sizes of yards, courts and other open spaces, the density of population, and the uses of buildings, structures and land for trade, industry, residence, recreation, public activities and other purposes. Special districts or zones may be established in those areas deemed subject to seasonal or periodic flooding, and such regulations may be applied therein as will minimize danger to life and property, and as will secure to the citizens of Tennessee the eligibility for flood insurance under Public Law 1016, 84th Congress or subsequent related laws or regulations promulgated thereunder. Protection and encouragement of access to sunlight for solar energy systems may be considered in promulgating zoning regulations pursuant to this section.

Section 13-7-202 provides in part:

**Zoning plan**. - Whenever the planning commission of the municipality makes and certifies to the chief legislative body a zoning plan, including both the full text of a zoning ordinance and the maps, representing the recommendations of the planning commission for the regulation by districts or zones of the location, height, bulk, number of stories and size of buildings and other structures, the percentage of the log which may be occupied, the size of yards, courts and other open spaces, the density of population, and the uses of buildings, structures and land for trade, industry, residence, recreation, public activities and other purposes, then the chief legislative body may exercise the powers granted and for the purposes mentioned in § 13-7-201, and may divide the municipality into districts or zones of such number, shape and areas it may determine, and, for such purposes, may regulate the erection, construction, reconstruction, alteration and uses of buildings and structures and the uses of land. [Acts 1935, ch. 44, § 2; C. Supp. 1950, § 3407.2; T.C.A. (orig. ed.), § 13-702.]

Section 13-7-204 provides in part:

**Amendments to zoning ordinances**. - The zoning ordinances including the maps, may from time to time be amended; but no amendment shall become effective unless it is first submitted to and approved by the planning commission or, if disapproved, receives the favorable vote of a majority of the entire membership of the chief legislative body. [Acts 1935, ch. 44, § 4; C. Supp. 1950, § 3407.4; T.C.A. (orig. ed.), § 13-704.]

Section 13-7-205 provides in part:

(a) The chief legislative body may create a board of zoning appeals of three (3) or five (5) members.

Section 13-7-206 provides in part:

**Jurisdiction of board - Parties to appeals**. - (a) The zoning ordinance may provide that the board of appeals may, in appropriate cases and subject to the principles, standards, rules, conditions and safeguards set forth in the ordinance, make special exceptions to the terms of the zoning regulations in harmony with their general purpose and intent. The chief legislative body may also authorize the board of appeals to interpret the zoning maps and pass upon disputed questions of lot lines or district boundary lines or similar questions as they arise in the administration of the zoning regulations.

(b) Appeals to the board of appeals may be taken by any person aggrieved or by any officer, department, board or bureau of the municipality affected by any grant or refusal of a building permit or other act or decision of the building commissioner of the municipality or other administrative official based in whole or part upon the provisions of this ordinance enacted under this part and part 3 of this chapter. [Acts 1935, ch. 44, § 5; C. Supp. 1950, § 3407.5; T.C.A. (orig. ed.), § 13-706.]

Section 13-7-207 provides in part:

**Powers of board of appeals**. - The board of appeals has the power to:

- - - -

(2) Hear and decide, in accordance with the provisions of any such ordinance, requests for special exceptions or for interpretation of the map or for decisions upon other special questions upon which such board is authorized by any such ordinance to pass; and

- - - -

without substantial detriment to the public good and without substantially impairing the intent and purpose of the zone plan and zoning ordinance. (Acts 1935, ch. 44, § 5; C. Supp. 1950, § 3407.5; T.C.A. (orig. ed.), § 13-707.]

Sections 13-7-302, 304 and 305 provide in part:

13-7-302. **Establishment of zones or districts outside municipality**. - Power is hereby granted to the chief legislative body of any municipality to establish by ordinance zones or districts in territory adjoining but outside of such municipality and lying within planning regions in which the municipal planning commission has been designated as the regional planning commission under § 13-3-102, and in which territory the county has no zoning already in force; provided, that prior to final enactment of such ordinance, six (6) months' notice of intent shall have been filed with the county executive of the county or counties within which the municipality and./or region lies. Within such zones or districts the municipality may by ordinance regulate the

location, height, bulk, number of stories and size of buildings and other structures, the percentage of lot occupancy, the required open spaces, the density of population and the uses of land, buildings, and structures. [Acts 1959, ch. 217, § 1; impl. am. Acts 1978, ch. 934, §§ 16, 36; T.C.A., § 130611,]

13-7-304. **Board of appeals - Creation - Members, appointment - Terms**. - In adopting the regional zoning ordinance, the chief legislative body of the municipality shall create a board of zoning appeals consisting of three (3) or five (5) members, a majority of whom shall be residents of the territory subject to the regional zoning provisions, and who shall be appointed for terms of such length and so arranged that the term of one (1) member shall expire each year. [Acts 1959, ch. 217, § 3; T.C.A., § 13-713.]

13-7-305. **Application of part 2 of this chapter.** - The terms of the municipal zoning regulations as appearing in part 2 of this chapter shall apply accept as specifically otherwise provided in this part. [Acts 1959, ch. 217, § 4; T.C.A., § 13-714.]

## METROPOLITAN GOVERNMENT

Title 7, Chapter 2 of Tennessee Code Annotated authorizes the creation of a combined government for cities and counties. It was enacted by chapter 120 of the Public Act of 1957 and subsequent amendments. The defendant, Metropolitan Government was created under the authority of this legislation. In general, it was granted the municipal powers of its predecessors, the City of Nashville and County of Davidson.

The plaintiff, Harpeth Valley Utility District, as created on August 18, 1959, by registration of its charter with the Secretary of State under the provisions of T.C.A. §§ 7-82-101 *et. seq.*, the "Utility Law of 1937." It provides water and sewerage disposal to areas of Davidson, Williamson and Cheatham. Its present disposal facilities are inadequate for the present and anticipated volume of wastewater.

On February 20, 1996, the Metropolitan Counsel of defendant, Metropolitan Government, adopted Resolution R96-167 approving an agreement between Metropolitan Government and the plaintiff utility including the following provision:

The parties agree that if HVUD determines that construction of an additional wastewater facility, to be sited downstream

from the Whites Creek Facility, is in the best interests of HVUD customers and ratepayers, METRO will cooperate with and use its best efforts to assist HVUD in its efforts to locate and construct such an additional treatment facility. METRO will incur no financial obligation by virtue of this assistance or cooperation. HVUD agrees to discuss with METRO possible service to or treatment of METRO wastewater at HVUD's downstream plant. If HVUD has not begun construction of its own wastewater treatment facility by December 31, 1998, HVUD agrees to enter into a new truck and treatment agreement with METRO, with terms substantially similar to the existing Trunk and Treatment Agreement and providing for rates and prices adjusted for increases or decreases in METRO's actual costs.

Plaintiff engaged the services of a competent engineering firm which provided a plan for a wastewater disposal facility. Plaintiff has acquired approximately 297 acres in "Bell's Bend" which satisfies the criteria of its planning engineers. The Tennessee Department of Environment and Conservation has approved the location and plan of the facility.

Potential bidders for construction of the facility are unwilling to contract to perform the construction without a building permit from the Metropolitan Department of Codes Administration or a court decision relieving plaintiff of the duty to obtain such a permit.

Application was made to the Metropolitan Zoning Administrator for such a permit, but the application was denied because "a wastewater treatment facility is not a permitted use at the location indicated in your plans".

Metropolitan Government has no jurisdiction to interfere with the construction of plaintiff's planned wastewater disposal facility after approval by the State Department of Environment and Conservation for a number of reasons:

1.    The Legislature provided for sanitary districts in 1901, thereby pre-empting control of such activity.

2.    Municipal Planning and Zoning was legislated in 1935, but the legislation granted no powers over other governmental bodies.

3.    In 1937, the Legislative provided that utility districts were governmental bodies.

4.    The Metropolitan Counsel, which planning powers over the actions of its planning and zoning agencies, has legislatively approved the construction of plaintiff's planned facility.

The intervenors argue that the plaintiff may not rely upon the doctrine of preemption because it was not presented to the Trial Court. The record contains a memorandum filed in the Trial Court on August 28, 1997, presenting this issue.

Metropolitan Government argues that municipal regulation of water utilities is permissible. However, no authority is cited or found that waste water facilities are subject to municipal regulation contrary to the express action of the municipal legislative authority.

In *Davidson County v. Harmon*, 200 Tenn. 575, 292 S.W.2d 777 (1956), the State of Tennessee planned a structure adjacent to a municipal airport. The Supreme Court held that the State was not subject to county zoning regulation despite the fact that the State had sought approval of county zoning authorities. The Court also held that a private act creating local zoning authority did not waive governmental immunity of the State or its instrumentalities unless the intention to do so was clearly expressed in the act.

The legislative act under which plaintiff was created clearly qualifies it for governmental immunity, and subsequent legislation as to sewage disposal activities accentuates this immunity. *Campbell v. City of Knoxville*, Tenn. 1974, 505 S.W.2d 710.

-14-

Local governments have no power to forbid what the general law of the State authorizes. *State ex. rel. Polin v. Hill*, Tenn. 1977, 547 S.W.2d 916.

The power of eminent domain includes the power to locate the public improvement for which private property is taken. *City of Maryville v. Edmondson*, Tenn. App. 1996, 931 S.W.2d 932.

The plaintiff and any persons or firms acting for plaintiffs are authorized to proceed with the construction of its proposed wastewater disposal facility as approved by the State Department of Environment and Conservation without any permit or license from any division of the local Metropolitan Government.

The question of what if any rights, if any, the intervenors or others to recover damages is outside the scope of this appeal.

For the reasons discussed above, the judgment of the Trial Court is reversed and vacated. One-half of the costs of this appeal is taxed against the Metropolitan Government of Nashville and Davidson County and one-half of said costs is taxed against the captioned intervenors, jointly and severally. The cause is remanded to the Trial Court for entry of judgment in conformity with this opinion, including an equitable assignment of liability against Metropolitan Government and the intervenors for costs accrued in that court.

**REVERSED AND REMANDED.**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCURS IN SEPARATE OPINION:
WILLIAM C. KOCH, JR., JUDGE
JERRY SMITH, SPECIAL JUDGE